1   John Henneberry

2   37359 Oak Street APT. #2

3   Newark, CA 94560

4   Voice: 510-509-7573

5   Email: henneberry@hotmail.com

6   Pro Se Plaintiff

7

FILED

MAY 23 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8   **UNITED STATES DISTRICT COURT**

9   **NORTHERN DISTRICT OF CALIFORNIA**

10

11                                  C16- 2766  EDL

12   JOHN  HENNEBERRY,                COMPLAINT  FOR CIVIL RIGHTS

13              Plaintiff             VIOLATIONS,  FRAUD,  KIDNAPPING

14        vs.

15   COUNTY OF ALAMEDA, CALIFORNIA;  CITY OF FREMONT, CALIFORNIA;  CITY OF

16   NEWARK, CALIFORNIA;   ASSISTANT ALAMEDA COUNTY DISTRICT ATTORNEY

17   JOHN WELLINGTON JAY (retired), SBN 88427;  ALAMEDA COUNTY DISTRICT

18   ATTORNEY NANCY E. O'MALLEY, SBN 111923;  ALAMEDA COUNTY DEPUTY

19   DISTRICT ATTORNEY ALEXANDER HERNANDEZ (resigned), SBN 280989;  ALAMEDA

20   COUNTY DEPUTY DISTRICT ATTORNEY CHRISTINE S. SAUNDERS, SBN 287882;

21   JUDGE OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

22   RICHARD OVERTON KELLER (retirement announced), SBN 40890;  COUNTY OF

23   ALAMEDA, CALIFORNIA ADMINISTRATOR SUSAN S. MURANISHI (CEO);

24   ALAMEDA COUNTY SHERIFF GREGORY J. AHERN;  NEWARK, CALIFORNIA CITY

25   MANAGER JOHN BECKER (CEO);  FREMONT, CALIFORNIA CITY MANAGER FRED

26   DIAZ (CEO);  CITY OF FREMONT, CALIFORNIA CHIEF OF POLICE RICHARD

27   LUCERO, SBN 207011;

28   List of defendants continues on page 2.

Henneberry  vs.  County of Alameda, et al.   Complaint                  page 1 of 24

List of defendants continued from page one:

CITY OF FREMONT, CALIFORNIA POLICE OFFICER MICHAEL RAMSEY, BADGE NUMBER 14175;  CITY OF NEWARK, CALIFORNIA CHIEF OF POLICE JAMES LEAL; CITY OF NEWARK, CALIFORNIA STREET ENFORCEMENT TEAM DETECTIVE ANTHONY HECKMAN, BADGE NUMBER 12;  CITY OF NEWARK, CALIFORNIA POLICE OFFICER YAMA HOMAYOUN, BADGE NUMBER 89;  ALAMEDA COUNTY SHERIFF'S DEPUTY JAMES LINN, BADGE NUMBER 2152;     DOES  1 – 100.

Defendants.

## INTRODUCTION

1.      This is a civil rights complaint arising from the unconstitutional and unlawful arrest and imprisonment of plaintiff John Henneberry.  On the night of July 2, 2014 Plaintiff was arrested at his home as a result of no-bail bench warrant for failure to appear in the California Superior Court of Alameda County for a misdemeanor arraignment.  The bench warrant was issued after the defendants utilized the United States Mail to serve plaintiff with a summons to appear in court and plaintiff failed to appear in court as ordered.  Service of the summons was improper because a sworn peace officer or an officer of the court should have personally served it.  To compound the faulty service, the summons was mailed to the wrong address despite the fact that all parties involved in the criminal matter had plaintiff's correct home address.  Plaintiff did not receive the summons and was unaware that he had been ordered to appear in court.  As a result of the July 2, 2014 arrest, plaintiff was held in the Alameda County jail for seven days without bail.  While being held in county custody, plaintiff was denied prescription medication and was never taken to court.  Plaintiff released from county custody only after a relative appeared in court on his behalf, requested that bail be set and then posted bail. Plaintiff was denied his rights to due process in accordance with the United States Constitution.  Plaintiff was also defrauded and kidnapped by state actors.  The misdemeanor charge for which plaintiff was eventually arraigned is a cite-and-release offense according to California State law.    Plaintiff was never convicted of any crime as a result of the arrest.

## JURISDICTION

2.      The jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 1983 et seq.; 28 U.S.C. §§ 1331 and 1343(a).  Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367.  Venue is proper in the Northern District of California as the events described in this complaint occurred in this district.

3.      Plaintiff has not yet filed administrative claims with any entity listed as a defendant in this complaint in compliance with California Government Code § 910, et seq. due to legal infeasibility that was created by the defendants.  Defendants were engaged in a malicious criminal prosecution of plaintiff when the six-month deadline expired for filing state claims.  A criminal conviction would likely have had a significant detrimental effect on any claims.  If plaintiff had filed state claims before the six-month deadline, the defendants would have had an incentive to continue their malicious criminal prosecution of plaintiff in an effort to manage civil liability.  Plaintiff will ask the court to grant a waiver for filing these administrative state claims.

## INTRADISTRICT ASSIGNMENT

4.      The claims alleged herein arose in the City of Newark and the City of Fremont and in the County of Alameda, State of California.  Therefore, venue and assignment lies in the United States District Court for the Northern District of California, San Francisco or Oakland Division.

## THE PARTIES

5.      Plaintiff **John Henneberry** is a resident of the City of Newark, California.

6.      Defendant **County of Alameda, California** (hereinafter: **ALCO**) is incorporated and organized under the laws of the State of California.  ALCO supervises, manages, directs and provides funding for the Superior Court of California, County of Alameda;  Santa Rita County jail;  the Alameda County District Attorney and the Alameda County Sheriff.  At the time plaintiff was injured, ALCO employed defendants O'Malley, Ahern, Muranishi, Jay, Hernandez, Saunders, Keller and Linn.  The Alameda County Sheriff chooses to partner with entities that are outside the control of defendant ALCO.  These outside entities include the Fremont police and the Newark police.

7.     Defendant **City of Fremont, California** (hereinafter: **Fremont**) is incorporated and organized under the laws of the State of California.  Fremont supervises, manages, directs and provides funding for the Fremont police.  At the time plaintiff was injured, Fremont employed defendants Ramsey, Lucero, and Diaz.  The Fremont police choose to partner with entities that are outside the control of defendant Fremont.  These outside entities include the Newark police, the Alameda County Sheriff's Department and the Superior Court of California, County of Alameda.

8.     Defendant **City of Newark, California** (hereinafter:  **Newark**) is incorporated and organized under the laws of the State of California.  Newark supervises, manages, directs and provides funding for the Newark police.  At the time plaintiff was injured, Newark employed defendants Becker, Leal, Heckman and Homayoun. The Newark police choose to partner with entities that are outside the control of defendant Newark.  These outside entities include the Fremont police department, the Alameda County Sheriff's Department and the Superior Court of California, Alameda County.

9.     Defendant **Assistant Alameda County District Attorney John Wellington Jay (retired), SBN 88427** (hereinafter:  **Jay**) was employed by defendant ALCO at the time plaintiff was injured.  Jay prepared, signed and mailed a summons to plaintiff that is described in this complaint. Service of that summons was faulty for two reasons:  1) It was mailed as opposed to being personally served by a sworn peace officer or an officer of the court; and,  2)  The summons was mailed to the wrong address despite the fact that defendant Ramsey provided Jay with plaintiff's correct address in a written police report that was submitted to the Alameda County District Attorney.  Jay was responsible for managing, supervising and directing all activities within the Office of the Alameda County District Attorney at the Fremont Hall of Justice, Fremont, California.  Jay supervised defendants Saunders and Hernandez at the time plaintiff was injured.  It is likely that Jay will also be identified as the defendant now named DOE#1.  Defendant named DOE#1 conspired with defendant Hernandez to violate plaintiff's constitutional right to have defense witnesses testify on his behalf during a criminal prosecution.

10.     Defendant **Alameda County District Attorney Nancy E. O'Malley, SBN 111923** (hereinafter: **O'Malley**) was responsible for managing, supervising and directing all operations

and employees at the Office of the Alameda County District Attorney at the time plaintiff was injured. She was the direct supervisor for defendant Jay at the time plaintiff was injured.

11. Defendant **Alameda County Deputy District Attorney Alexander Hernandez (resigned), SBN 280989** (hereinafter: **Hernandez**) was employed by defendant ALCO at the time plaintiff was injured. In February, 2015 Hernandez openly admitted in a court proceeding that he contacted plaintiff's properly subpoenaed defense witnesses during a criminal trial and told those witnesses not to come to court, thereby depriving plaintiff of his right to due process. The trial judge agreed that the defense witnesses had been properly subpoenaed. Hernandez' statement in court was as follows (paraphrased): "I spoke with my supervisor and we phoned these witnesses and told them not to come to court." The supervisor Hernandez mentioned is DOE #1 and will likely be identified as defendant Jay.

12. Defendant **Alameda County Deputy District Attorney Christine S. Saunders, SBN 287882** (hereinafter: **Saunders**) was employed by defendant ALCO at the time plaintiff was injured. Court records demonstrate that Saunders appeared at the Fremont Hall of Justice on behalf of the state on Monday, July 7, 2014 in an effort to prevent or significantly hinder plaintiff's release from county custody at Santa Rita jail. On this day, plaintiff had been in county custody for six days and had not been taken to court. Plaintiff was still being held at Santa Rita jail in Dublin during this July 7 court proceeding; plaintiff was not present in court when Saunders argued in court to deny plaintiff's release despite the fact that she had a copy of the improperly served summons. Saunders successfully argued that plaintiff had failed to appear in court, effectively arguing that the summons had been properly served, and in doing so, deprived plaintiff of his constitutional right to due process.

13. Defendant **Judge of The Superior Court of California, County of Alameda, Richard Overton Keller (retirement announced), SBN 40890** (hereinafter: **Keller**) was employed by defendant ALCO at the time plaintiff was injured. Judge Keller signed and issued the no-bail bench warrant that caused plaintiff's unconstitutional and unlawful arrest on July 2, 2014. Keller had a copy of the simple, one-page summons at the time he signed and issued the no-bail bench warrant for plaintiff's failure to appear in court. The summons was prepared, signed and improperly served by defendant Jay. The summons clearly stated that the summons had been

served by mail. Defendant Keller was instrumental in depriving plaintiff of his constitutional right to due process.

14.   Defendant **County of Alameda, California Administrator Susan S. Muranishi (CEO)** (hereinafter: **Muranishi**) was employed by defendant ALCO at the time plaintiff was injured. Muranishi is the top administrative officer for defendant ALCO and is responsible for directing, supervising and managing all activities and employees for defendant ALCO.

15.   Defendant **Alameda County Sheriff Gregory J. Ahern** (hereinafter: **Ahern**) was employed by defendant ALCO at the time plaintiff was injured. Defendant Ahern is responsible for managing, directing and supervising the Alameda County Sheriff's Department including all sheriff's deputies and other non-sworn staff within the sheriff's department, including the jails. The Sheriff's Office manages the Alameda County jail Santa Rita where plaintiff was held for seven days in violation of his United States Constitutional guarantees. The sheriff's office is responsible for transporting prisoners to court in a timely way. Plaintiff was held in the custody of the sheriff's department for seven days without ever being taken to court. During this time plaintiff had not been arraigned for any crime.

16.   Defendant **Newark, California City Manager John Becker (CEO)** (hereinafter: **Becker**) was employed by defendant Newark at the time plaintiff was injured. Becker is the top administrative officer for defendant Newark and is responsible for managing, supervising and directing all operations and employees for defendant Newark. Defendant Newark Police Chief James Leal reports directly to defendant Becker.

17.   Defendant **Fremont, California City Manager Fred Diaz (CEO)** (hereinafter: **Diaz**) was employed by defendant Fremont at the time plaintiff was injured. Diaz is the top administrative officer for defendant Fremont and is responsible for managing, supervising and directing all operations and employees for defendant Fremont. Defendant Fremont Police Chief Richard Lucero reports directly to defendant Diaz.

18.   Defendant **City of Fremont, California chief of police Richard Lucero, SBN 207011** (hereinafter: **Lucero**) supervises, manages and directs all employees and operations for the Fremont police department. He is responsible for all policy creation and implementation within the police department. Lucero is responsible for the actions of defendant Ramsey.

Henneberry vs. County of Alameda, et al.   Complaint                          page 6 of 24

19.     Defendant **City of Fremont, California police officer Michael Ramsey, badge number 14175** (hereinafter: **Ramsey**) was employed by defendant Fremont at the time plaintiff was injured.  Acting on a citizen's complaint, Ramsey and three other unnamed police officers from the Fremont police and Newark police arrived at plaintiff's house unannounced on April 29, 2014 to investigate plaintiff as a criminal suspect.  Before plaintiff opened the front door to his house, Ramsey told plaintiff, "I'm not going to arrest you."   On this day, plaintiff spoke with Ramsey on plaintiff's front porch for about twenty minutes.  Following this conversation, Ramsey made a written report to the Alameda County District Attorney, recommending that plaintiff be charged with assault with a deadly weapon, a felony.  As a result of this report, plaintiff was never arrested for any felony.  The report that Ramsey made to the district attorney constituted fraud.

20.     Defendant **City of Newark, California chief of police James Leal** (hereinafter: **Leal**) supervises, manages and directs all employees and operations for the Newark police department. He is responsible for all policy creation and implementation within the police department.  Leal is responsible for the actions of defendants Heckman and Homayoun.

21.     Defendant **City of Newark, California street enforcement team detective Anthony Heckman, badge number 12** (hereinafter: **Heckman**) has been reassigned by the Newark police department.  Heckman arrested plaintiff at his home on July 2, 2014.  Heckman told plaintiff that he had a warrant for his arrest.  Before surrendering to Heckman plaintiff asked what the warrant was for and Heckman replied, "Assault."

22.     Defendant **City of Newark, California police officer Yama Homayoun, badge number 89** (hereinafter: **Homayoun**) transported plaintiff from his home in Newark to Santa Rita jail in Dublin, CA after defendant Heckman arrested plaintiff.

23.     Defendant **Alameda County sheriff's deputy James Linn, badge number 2152** (hereinafter: **Linn**) attempted to dissuade plaintiff from making a formal, written jailhouse complaint against the sheriff's department regarding prescription medication that had been withheld.  Plaintiff was denied prescription medication for six days while in the custody of the sheriff's department.  Plaintiff asked for this medication several times over a period of several days.  After several days of complaints, an unnamed sheriff's deputy advised plaintiff to

complete a, 'grievance form.' Plaintiff completed this form, describing the problem. When plaintiff attempted to submit the completed form to Linn, defendant Linn told plaintiff that plaintiff should not be complaining about the sheriff's department because the sheriff's medical contractor was the party that was at fault. Plaintiff did not tell defendant Linn that as a prisoner, plaintiff was in the custody of the sheriff's department, not the sheriff's medical contractor. Instead, plaintiff simply replied to Linn, "The other deputy told me to complete a grievance form." Defendant Linn then told plaintiff, "You're not very bright are you?"

24.     Defendant DOES 1 – 100. Are unnamed defendants. DOE #1 actively conspired with defendant Hernandez to violate plaintiff's constitutional right to defense witnesses. DOE #1 is likely to be identified as named defendant Jay.

## FACTS

25.     On the night of April 23, 2014, plaintiff was the victim of an automobile theft. Several minutes after the theft, plaintiff exchanged words with the suspected thief. At this time the suspected thief admitted to plaintiff that he took plaintiff's car. A few days later the suspected thief reported plaintiff to the Fremont Police, claiming that plaintiff had victimized him. The suspected thief is not a party to this lawsuit and has not been prosecuted for any crime as a result of the theft.

26.     On or around the day of April 29, 2014 (hereinafter: April 29) plaintiff was inside his legal residence, located at 37359 Oak Street, apartment number 2, Newark California 94560 (hereinafter: APT 2). At this time Plaintiff answered a knock on his front door. While still inside his house, plaintiff spoke with a police officer through a security screen front door. This police officer was defendant Ramsey. Ramsey told plaintiff (paraphrased): "I want to talk to you about what happened at PK Market. I'm not going to arrest you." Plaintiff's car was stolen at PK Market in Fremont, so it struck plaintiff as odd that Ramsey would tell plaintiff that he was not going to arrest plaintiff because plaintiff had been the victim of a property crime. Plaintiff then went out to his front porch and spoke with defendant Ramsey for about 20 minutes, describing the theft of his car that had taken place about a week earlier. Including Ramsey there

1    were two police officers from the Fremont police department and plaintiff also noticed two other

2    police officer lurking around the side of his house. Plaintiff asked Ramsey about these two other

3    police officers and Ramsey said they were Newark police officers and that it was, "Standard

4    procedure for them to be here because we're in Newark." During the entire 20-minute encounter

5    the two Newark police officers never came to where plaintiff was speaking with Ramsey. They

6    continued to lurk around the corner of plaintiff's house.

7    27.    Despite the fact that plaintiff spoke with defendant Ramsey for about 20 minutes

8    describing the theft of his car in detail during Ramsey's unannounced visit on April 29, Ramsey

9    made no mention of the automobile theft in his written report that Ramsey submitted to the

10   Alameda County District Attorney. Before Ramsey left plaintiff's house, he attempted to shake

11   hands with plaintiff. Plaintiff then told Ramsey, "I don't shake hands with cops. There are too

12   many of you and you're overpaid. I'll be submitting a written report to the Fremont police in the

13   coming weeks." Plaintiff completed his theft investigation about six weeks later and submitted

14   a six-page written report to the Fremont police on June 24, 2014.

15   28.    When plaintiff spoke with Ramsey on April 29, Ramsey told plaintiff that he had spoken

16   with the owner of PK Market, an individual identified as Surenderpal Walia. Mr. Walia is the

17   person that admitted to plaintiff that he took plaintiff's car. Also on April 29, Ramsey told

18   plaintiff that he saw a video of plaintiff throwing a 20-ounce plastic beverage bottle across Mr.

19   Walia's store. Plaintiff made no comment to Ramsey about this video that Ramsey had claimed

20   to have seen.

21   29.    To clarify, before defendant Ramsey arrived at plaintiff's house on April 29, Ramsey had

22   already seen video evidence that plaintiff had thrown a plastic bottle across Mr. Walia's store.

23   The existence of this video and the time that Ramsey first viewed it was later confirmed.

24   30.    The chronology of events demonstrates that defendant Ramsey had collected all evidence

25   regarding the possibility that plaintiff had committed a crime before he spoke with plaintiff on

26   April 29. This is because while speaking with Ramsey, plaintiff provided Ramsey with no

27   information that plaintiff had committed a crime. Plaintiff spent 20 minutes telling Ramsey the

28   details surrounding the theft of his car.

1   31.     To summarize previous paragraphs, before speaking with plaintiff on April 29, defendant

2   Ramsey told plaintiff, "I'm not going to arrest you." Following a 20-minute conversation with

3   plaintiff, Ramsey gathered no additional evidence that plaintiff had a committed a crime and then

4   attempted to shake hands with plaintiff before leaving plaintiff's house.

5   32.     After Ramsey left plaintiff's house on April 29 he submitted a written report to the

6   Alameda County District Attorney. In this report, Ramsey made a written recommendation that

7   plaintiff be charged with assault with a deadly weapon, a felony. At no time after Ramsey

8   submitted his report to the district attorney did Ramsey attempt to arrest plaintiff as a violent

9   felony suspect. In the interest of promoting public safety, Ramsey or some other member of the

10  Fremont police would have arrested plaintiff if the police had suspected plaintiff of committing a

11  violent felony.

12  33.     Some time after defendant Ramsey submitted his report to the Alameda County District

13  Attorney, defendant Jay prepared, signed and mailed a summons to plaintiff. This summons is

14  dated May 19, 2014 and it is attached to this complaint as, 'EXHIBIT A'. This summons is a

15  simple one-page document written on letterhead containing the name of defendant O'Malley. At

16  the bottom of the single-page summons is the proof of service. The proof of service states that

17  the summons was placed in the United States Mail. At the top of the summons is the address that

18  the summons was presumably mailed to. The mailing address was not plaintiff's residence

19  address, it was not plaintiff's business address and it was not a former address for plaintiff.

20  Plaintiff did not receive the summons and he had no idea that he was ordered to appear in court

21  for an arraignment on June 27, 2014. Plaintiff obtained a copy of the summons at the Fremont

22  Hall of Justice on or around July 10, 2014, which was after plaintiff was released from sheriff's

23  custody at Santa Rita Jail in Dublin on July 8, 2014.

24  34.     At approximately 7:00pm on July 2, 2014 plaintiff was inside his legal residence

25  (APT. 2) and answered a knock on his front door. A man was standing on plaintiff's front porch

26  dressed in blue jeans, sneakers and a gun belt. This gunman was later identified as defendant

27  Heckman. Heckman told plaintiff that he had a warrant for his arrest. While still inside his

28

house, plaintiff asked defendant Heckman through the front security screen door the reason for which the warrant was issued. Heckman simply replied, "Assault."

35.     Plaintiff told Heckman that he needed to make a phone call. Plaintiff then phoned a relative and told them that he was being arrested. Plaintiff then put only his California drivers license and prescription eye drops for treating glaucoma in his pocket. Plaintiff then surrendered to Heckman about ten minutes after Heckman first knocked on plaintiff's front door.

36.     Heckman handcuffed plaintiff's hands behind plaintiff's back and lead plaintiff to a marked Newark police car. Plaintiff noticed there were several police officers in front of his house and plaintiff's roommate had arrived just minutes before plaintiff surrendered. Plaintiff's roommate later told plaintiff that the police had told him, "You know, we can kick down the door if we want."

37.     Plaintiff was placed in the back seat of a marked Newark police car. Plaintiff sat in this car for about 30 minutes in front of his house and it created quite a public spectacle. Plaintiff spoke with a neighbor about two weeks after the incident. That neighbor said this spectacle was significant to the extent that it caused the neighbor's two-year-old daughter to cry.

38.     While sitting in the Newark police car in front of his house, plaintiff could hear defendant Heckman conferring with other police officers that were standing around the police car. Plaintiff could hear Heckman say (paraphrased), "I need to confirm the warrant."

39.     After sitting handcuffed in the back of a Newark police car in front of his house for about 30 minutes, plaintiff was transported to Santa Rita jail in Dublin by defendant Homayoun. Seated in the police car next to Homayoun was an unidentified female civilian observer. This comely woman was about 25 years old, smelled of cologne and based on their behavior it appears as though she and defendant Homayoun were on a date. While driving on the freeway, Homayoun and the civilian spent a significant portion of the trip viewing images on the civilian's mobile phone. At one point, due to the aforementioned distraction, defendant Homayoun nearly rear-ended another car on the freeway. At that point plaintiff told Homayoun that his driving was being distracted and he needed to pay attention to the road.

40.     It was not until defendant Homayoun was taking plaintiff out of the police car at Santa Rita jail car did plaintiff learn something about the arrest.  After plaintiff asked Homayoun about the charges, Homayoun told plaintiff that he was arrested for CPC 240, a misdemeanor.  It was not until seven days later while being released from Santa Rita jail did plaintiff learn the true reason he was arrested;  failure to appear.  About five minutes before plaintiff was released from Santa Rita jail on July 8, 2014, jail staff told plaintiff that he had been jailed for failure to appear.

41.     While being processed into Santa Rita jail, plaintiff gave his California drivers license to a jail staff member that was processing paperwork.  Despite the fact that this unidentified administrator had picture identification as reference, she wrote plaintiff's name wrong on her form and plaintiff had to advise her that she made an error.  The error was not insignificant;  she didn't simply misspell plaintiff's name.  She wrote a significantly different last name on the paperwork she was completing.  She corrected the error but likely made other errors because plaintiff's prisoner identification number was wrong while plaintiff was held in sheriff's custody.

42.     Plaintiff spent approximately the first 24 hours in sheriff's custody being moved around various concrete holding cells.  These cells were dirty, strewn with garbage and there was no place to lie down, except for concrete floors.  Plaintiff was forced to use toilets in full view of other prisoners and prison staff.  While in these holding cells, plaintiff encountered prisoners that had a variety of psychiatric problems as well as other prisoners that had been classified by the sheriff's department as violent.  Sheriff's department employees strip-searched plaintiff at Santa Rita jail.

43.     Plaintiff was screened by medical staff while being processed into Santa Rita jail. It was then that plaintiff told the medical screeners that he had brought prescription eye drops with him to jail, but those eye drops had been confiscated by the sheriff's department.  Plaintiff and the medical screeners identified the name of the medication.  Plaintiff told the medical staff that he needed to use the prescription daily to treat glaucoma.  It was during this screening that a sheriff's deputy observing the medical screening told plaintiff that he'd be given this medication after he was moved to a housing unit at the jail.

1    44.    Despite repeated requests over the next six days, plaintiff was not given the prescription

2    medication that he needed to use daily.  Plaintiff was finally given the medication about 12 hours

3    before he was released from sheriff's custody on July 8, 2014.

4    45.    'Pill call' takes place twice a day in the housing units at Santa Rita jail.  This is the time

5    when prisoners are given prescription medication.  During pill call on approximately the third

6    day plaintiff was being held in sheriff's custody, plaintiff told the medical staff member that was

7    distributing medication that he had brought prescription medication with him to jail but still had

8    not received this medication.  The unidentified woman plaintiff spoke with became agitated and

9    told plaintiff to get away from her or she would summon a sheriff's deputy.

10   46.    On approximately the fifth day plaintiff was held in sheriff's custody, plaintiff was placed

11   in a concrete holding cell for approximately one-hour after he advised sheriff's deputies that the

12   sheriff's department had continued to neglect plaintiff's prescription medication;  medication

13   that was being held with plaintiff's property by the sheriff's department.  Plaintiff also advised

14   the deputy that he needed to use this medication daily.  After about an hour in this concrete

15   holding cell, a sheriff's deputy told plaintiff that he had contacted a doctor and that doctor had

16   advised him that plaintiff did not need this medication.  From the time plaintiff was taken into

17   custody to this time, which was approximately day five of imprisonment, plaintiff was not

18   examined by any doctor and did not speak with any doctor.  Following this denied request for

19   medication, the unidentified sheriff's deputy advised plaintiff to complete a grievance form.

20   47.    Acting on the advice of the unidentified sheriff's deputy described in paragraph 46 of this

21   complaint, plaintiff completed a grievance form describing how his prescription medication was

22   being withheld or otherwise neglected by the sheriff's department.  Plaintiff attempted to submit

23   the completed grievance form to defendant Linn.  Defendant Linn attempted to dissuade plaintiff

24   from submitting the completed grievance form.  Linn told plaintiff that he should complain about

25   the sheriff's department's medical contractor because the sheriff's department was not

26   responsible for the problem.  Plaintiff considered Linn's statement absurd and abusive because

27   plaintiff was not being held in the custody of the medical contractor.  In an effort to not provoke

28

1  defendant Linn, plaintiff simply replied to Linn, "The other deputy told me to turn-in the form."

2  Deputy Linn ended this conversation by telling plaintiff, "You're not very bright are you?"

3  48.    On approximately the fifth day plaintiff was in sheriff's custody, jail staff told plaintiff

4  that he had been given the wrong prisoner identification number while being processed into the

5  jail on Wednesday, July 2.

6  49.    While being held in sheriff's custody for seven days, plaintiff was ready, willing and able

7  to appear in court.  The Alameda County Sheriff's Department never transported plaintiff to

8  court while he was in their custody.

9  50.    After being released from sheriff's custody, plaintiff learned that a relative had gone to

10  court on his behalf on July 7, 2014, requested that defendant Keller set bail and then posted bail.

11  It was not until about two days after plaintiff was released from sheriff's custody did plaintiff

12  learn that a summons had been issued, mailed to plaintiff and mailed to the wrong address.

13  51.    After being released from sheriff's custody, plaintiff learned that defendant Saunders

14  appeared at the Fremont Hall of Justice on behalf of the state on Monday, July 7, 2014 in an

15  effort to prevent or significantly hinder plaintiff's release from county custody at Santa Rita jail.

16  On this day, plaintiff had been in county custody for six days and had not been taken to court.

17  Plaintiff was still being held at Santa Rita jail in Dublin during this July 7 court proceeding;

18  plaintiff was not present in court when Saunders argued to prevent plaintiff's release despite the

19  fact that she had a copy of the improperly served summons.  Saunders successfully argued that

20  plaintiff had failed to appear in court, effectively arguing that the summons had been properly

21  served, and in doing so, violated plaintiff's constitutional right to due process.

22  52.    Defendant Keller ratified defendant Saunders' actions that are described in paragraph 51

23  of this complaint by requiring that bail be posted for failure to appear.  Keller had a copy of the

24  summons, or, as a matter of due process, defendant Keller should have demanded to see the

25  summons to ensure that plaintiff had been properly served.  Defendant Keller signed and issued

26  the no-bail bench warrant for plaintiff's failure to appear in court on June 27, 2014 despite

27  improper and faulty service of a summons.  By issuing the no-bail bench warrant on June 27 and

28  then requiring plaintiff to post bail on July 7,  defendant Keller violated plaintiff's right to due

1  process. Plaintiff was only charged with a single cite-and-release misdemeanor.

2  53.   Despite being the victim of a property crime, plaintiff was charged with CPC 240, simple

3  assault. Plaintiff was never charged with battery or any crime that would have given the

4  defendants legal cause to arrest and imprison plaintiff. According California State law, CPC 240

5  is a cite-and-release misdemeanor offense. Despite the faulty service of the summons and the

6  single, cite-and-release charge, defendant Keller did not exonerate bail until about 15 months

7  after it was posted.

8  54.   Plaintiff was never convicted of any crime as a result of July 2, 2014 arrest.

9

10  **CLAIMS  FOR  RELIEF**

11

12  FIRST CLAIM FOR RELIEF

13  Violation of Fifth Amendment to The United States Constitution

14  (42 U.S.C.  § 1983)

15  55.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

16  complaint.

17  56.   Defendants and each of their above described conduct violated plaintiff's constitutional

18  right to due process. The state opted to arraign plaintiff for a crime but the state did not properly

19  serve plaintiff with a court summons for that arraignment. The result is that plaintiff was

20  unconstitutionally and unlawfully arrested for a no-bail bench warrant for failure to appear. The

21  state had no legal authority to arrest plaintiff as a criminal suspect because the misdemeanor for

22  which plaintiff was charged is a cite-and-release offense according to California State law.

23  Plaintiff was held unconstitutionally and unlawfully in custody at the Alameda County jail for

24  seven days due to the defendants' actions.

25    'Due process is violated if a practice or rule, "Offends some principle of justice

26     so rooted in the traditions and conscience of our people as to be ranked as

27     fundamental."   *Snyder  vs. Massachusetts, 291  U.S.  97  105 (1934).'*

28

Henneberry  vs.  County of Alameda, et al.   Complaint        page 15  of 24

1

SECOND CLAIM FOR RELIEF

2

Violation of Fourth Amendment to The United States Constitution

3

(42 U.S.C. § 1983)

4   57.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

5   complaint.

6   58.      Defendants and each of their above described conduct violated plaintiff's constitutional

7   right to be free from unreasonable search and seizure and/or arbitrary force and/or arrest and/or

8   imprisonment without reasonable or probable cause under the Fourth Amendment to the United

9   States Constitution.

10

11

THIRD CLAIM FOR RELIEF

12

Violation of Sixth Amendment to The United States Constitution

13

(42 U.S.C. § 1983)

14   59.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

15   complaint.

16   60.      Defendants and each of their above described conduct violated plaintiff's constitutional

17   right to have defense witnesses testify on his behalf during a criminal prosecution.  Defendants

18   DOE #1 and Hernandez contacted properly subpoenaed defense witnesses while DOE #1 and

19   Hernandez were prosecuting plaintiff for a crime.  Defendants DOE #1 and Hernandez told these

20   defense witnesses not to appear in court.

21

22

FOURTH CLAIM FOR RELIEF

23

Violation of Fourteenth Amendment to The United States Constitution

24

(42 U.S.C. § 1983)

25   61.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

26   complaint.

27   62.      Defendants and each of their above described conduct violated plaintiff's constitutional

28   right to equal protection under the law.

Henneberry vs. County of Alameda, et al.  Complaint                                    page 16 of 24

FIFTH CLAIM FOR RELIEF

Conspiracy Against Civil Rights

(42 U.S.C. § 1983)

63.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

64.    Defendants and each of their above described conduct conspired to violate plaintiff's constitutionally protected civil rights.    18 U.S.C. § 241

SIXTH CLAIM FOR RELIEF

Deprivation of Rights Under Color of Law

(42 U.S.C. § 1983)

65.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

66.    Defendants and each of their above described conduct acted under color of law to deprive plaintiff of his constitutionally protected civil rights. 18 U.S.C. § 242

SEVENTH CLAIM FOR RELIEF

Mail Fraud

(42 U.S.C. § 1983)

67.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

68.    Defendants and each of their above described conduct used the United States Mail to defraud plaintiff.  Defendants prepared and mailed a summons to plaintiff.  Plaintiff did not receive the summons, had no idea that he was ordered to appear in court and therefore failed to appear in court.  Defendants then issued a faulty and fraudulent no-bail bench warrant for plaintiff's arrest for failure to appear.  Plaintiff was injured as a result of the arrest and this injury was the result of fraud.    18 U.S.C. §§ 1341, 1346

EIGHTH CLAIM FOR RELIEF

Wire Fraud

(42 U.S.C. § 1983)

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

70.     Defendants and each of their above described conduct used telephones and/or police radios to prepare and execute the faulty and fraudulent no-bail bench warrant whereby plaintiff was unconstitutionally and unlawfully imprisoned.  18 U.S.C.  §§  1343, 1346

NINTH CLAIM FOR RELIEF

Attempt and/or Conspiracy to Commit Mail Fraud and/or Wire Fraud

(42 U.S.C. § 1983)

71.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

72.     Defendants and each of their above described conduct attempted and/or conspired to commit Mail Fraud and/or Wire Fraud.  18 U.S.C.  § 1349

TENTH  CLAIM FOR RELIEF

Kidnapping, Conspiracy to Kidnap and Using the Mail in Furtherance of

The Commission of The Offense of Kidnapping

(42 U.S.C. § 1983)

73.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

74.     Defendants and each of their above described conduct used the United States Mail to further the commission of the offense of kidnapping.  In accordance with the statute and subsection cited in this paragraph, the defendants did not need to transport plaintiff across state lines after kidnapping plaintiff to violate federal kidnapping statutes provided that the United States Mail was utilized to further the offense of kidnapping.  The defendants prepared the summons described in this complaint and then utilized the United States Mail to represent that

Henneberry vs. County of Alameda, et al.  Complaint

the summons had been properly served.  The defendants acting under color of authority then conspired to kidnap plaintiff.  The defendants were armed with deadly weapons when they unlawfully took plaintiff from his home against his will.  Federal kidnapping statutes do not exclude or otherwise immunize judicial officials or other state actors.   18 U.S.C.  § 1201(a)(1)

## ELEVENTH CLAIM FOR RELIEF

### Hostage Taking

### (42 U.S.C.  § 1983)

75.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

76.    Defendants and each of their above described conduct took plaintiff from his home against his will and held him hostage for a period of seven days before releasing him.  Federal statutes do exclude or otherwise immunize judicial officials or other state actors.

18 U.S.C.  § 1203

## TWELFTH CLAIM FOR RELIEF

### Receiving and Possessing Ransom Money

### (42 U.S.C.  § 1983)

77.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

78.    Defendants and each of their above described conduct took plaintiff from his home against his will and held him hostage.  The defendants then demanded $5,000 for his release. Plaintiff's relative paid the defendants this ransom money, plaintiff was released by defendants and then defendants held this ransom money for a period of approximately 15 months.  Federal statutes do exclude or otherwise immunize judicial officials or other state actors.

18 U.S.C.  § 1202

THIRTEENTH CLAIM FOR RELIEF

Criminal Street Gang Injunction

(42 U.S.C. § 1983)

79.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

80.     By definition, the defendants named in this action are members of a criminal street gang. To promote public safety and liberty and to prevent future criminal conspiracies, plaintiff seeks to enjoin all of the defendants from associating with each other.  Federal statutes do not exclude or otherwise immunize judicial officials or other state actors.     18 U.S.C. §521

FOURTEENTH CLAIM FOR RELIEF

Battery

81.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

82.     During the course of plaintiff's arrest and imprisonment described herein, defendants and each of them committed numerous acts of battery upon plaintiff.  CPC § 242

FIFTEENTH CLAIM FOR RELIEF

False Arrest and False Imprisonment

83.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

84.     Plaintiff was arrested and imprisoned by defendants without reasonable or probable cause to believe that plaintiff had committed a crime that legally and constitutionally justified plaintiff's arrest and imprisonment.

85.     Defendants and each of them intentionally and unlawfully arrested and imprisoned plaintiff in the Alameda County jail for prolonged, excessive and unreasonable periods of time and under unreasonable, unsafe and inhumane conditions.

CPC §§  853.6,  236

1

2

## SIXTEENTH CLAIM FOR RELIEF

### Kidnapping

3    86.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

4    complaint.

5    87.    Defendants and each of them violated California State law by kidnapping plaintiff.

6    CPC §§ 207, 209, 210, 853.6

7

8

## SEVENTEENTH CLAIM FOR RELIEF

### Conspiracy to Falsely and Maliciously Indict Plaintiff for a Crime

9    88.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

10   complaint.

11   89.    Defendants and each of their above described conduct violated California State law by

12   conspiring to falsely and maliciously indict plaintiff for a crime.  The incident that gave rise to

13   the defendants' actions described in this complaint was a property crime.  Plaintiff was the

14   victim of that property crime and the perpetrator of that crime freely admitted to his criminal

15   acts. Despite this, the defendants described herein falsely and maliciously indicted plaintiff for a

16   crime and did not indict the perpetrator of the property crime.

17   CPC §§ 182(a)(2), 182(a)(3)

18

19

## EIGHTEENTH CLAIM FOR RELIEF

### Conspiracy to Commit Fraud

20

21   90.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this

22   complaint.

23   91.    Defendants and each of their above described conduct conspired to defraud plaintiff in

24   violation of California State law.  CPC § 182(a)(4)

25

26

27

28

Henneberry  vs.  County of Alameda, et al.   Complaint                                    page 21  of 24

NINETEENTH CLAIM FOR RELIEF

Committing Acts Against Plaintiff That Was Injurious to The Due Administration of The Laws

92.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

93.     Defendants and each of their above described conduct violated California State law by conspiring to commit acts against plaintiff that were injurious to the due administration of the laws.  The incident that gave rise to the defendants' actions described in this complaint was a property crime.  Plaintiff was the victim of that property crime and the perpetrator of that crime freely admitted to his criminal acts.  Despite this, the defendants described herein falsely and maliciously indicted plaintiff for a crime and did not indict the perpetrator of the property crime. CPC § 182(a)(5)

TWENTIETH CLAIM FOR RELIEF

Violation of California Civil Code § 52.1

94.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this complaint.

95.     The defendants and their above described conduct, acting under color of law, violated plaintiff's right to peaceful exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California.   CCC § 52.1

REQUISITES FOR RELIEF

96.     As an actual and proximate result of the defendants' conduct described herein, plaintiff has been denied his constitutional, statutory and legal rights as stated below, and has suffered general and special damages, including but not limited to, mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, anxiety and other damages in an amount according to proof.

97.     Defendants' acts were willful, wanton, malicious, fraudulent and oppressive and done with conscious disregard and deliberate indifference for plaintiff's rights.

98.     Plaintiff is informed and believes the violations of plaintiff's constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers and decision makers of the defendants County of Alameda, City of Newark and City of Fremont.

99.     An actual controversy exists between plaintiff and defendants in that plaintiff contends that the policies, practices and conduct of the defendants alleged herein are unlawful and unconstitutional, whereas plaintiff is informed and believes that defendants contend that said policies, practices and conduct are lawful and constitutional.  Plaintiff seeks a declaration of rights with respect to this controversy.

## PRAYER

Plaintiff prays for judgment against defendants, and each of them as follows:

1.      For entry of an order declaring plaintiff's arrest null and void;

2.      For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

3.      For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiff's rights under the constitution and laws of the United States and the State of California;

4.      For a preliminary and permanent federal street gang injunction, restraining all of the defendants from associating with each other.

5.      For general and compensatory damages for violation of plaintiff's federal and state constitutional and statutory rights, pain and suffering, all to be determined according to proof;

6.      For punitive and exemplary damages in amounts to be determined according to proof;

7.      For statutory damages and penalties pursuant to California Civil Code § 52(b) to be determined according to proof;

8.      For costs of the lawsuit;

9.      For pre-judgment and post-judgment interest as permitted by law;

10.     For such other and further relief that the court may deem just and proper.

1   Dated: May 23, 2016                    JOHN  HENNEBERRY
2                                          Pro Se Plaintiff
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HENNEBERRY vs. COUNTY OF ALAMEDA, ET AL

EXHIBIT 'A' FOLLOWS, ONE-PAGE DOCUMENT:

SUMMONS SIGNED BY ASSISTANT DISTRICT ATTORNEY JOHN JAY,

DATED MAY 19, 2014

**Office of the District Attorney**
**Alameda County**
Nancy E. O'Malley, District Attorney



**Fremont Hall of Justice**
39439 Paseo Padre Parkway, Suite 120
Fremont, CA 94538

May 19, 2014

CEN: **4323025**

JOHN PATRICK HENNEBERY
37359 OAK ST #1
NEWARK, CA 94560

A criminal complaint and summons has been filed against you in the above-entitled court.

You are required to appear on **JUNE 27, 2014** at **2:00PM** in Department **604**.

Failure to appear will result in a warrant being issued for your arrest.

**NANCY E. O'MALLEY**
District Attorney

BY: _____
        John Jay
        Assistant District Attorney

### DECLARATION OF SERVICE BY MAIL (C.C.P. 1013A(3), 2015.5)

On the date shown below, I served the foregoing document by depositing a true copy thereof, enclosed in a separate, sealed envelope, with the postage thereon fully prepaid, in the United States mailbox at 39439 Paseo Padre Parkway, Fremont, California.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 19, 2014 at Fremont, California

By: _____