UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN HENNEBERRY,

       Plaintiff,

   v.

COUNTY OF ALAMEDA, et al.,

       Defendants.

Case No.16-cv-02766-EDL

**ORDER GRANTING MOTIONS TO DISMISS WITH PREJUDICE**

Re: Dkt. Nos. 25, 26, 27, 34,

## I.    INTRODUCTION

This is a civil rights complaint brought by pro se Plaintiff John Henneberry against four groups of defendants: (1) the City of Newark, City Manager John Becker, Police Chief Leal, and Officers Heckman and Houman (collectively "the Newark Defendants"); (2) the City of Fremont, City Manager Fred Diaz, Police Chief Richard Lucero and Officer Michael Ramsey (collectively "the Fremont Defendants"); (3) the County of Alameda, Assistant District Attorney John Jay, District Attorneys Nancy O'Malley, Alexander Hernandez, and Christine Saunders, County Administrator Susan Muranishi, Sheriff Greg Ahern and Deputy James Linn (collectively "the County Defendants"); and (4) Judge Richard Keller of the Alameda County Superior Court.[1]

The Complaint asserts 20 claims against all of the defendants: (1) Violation of Fifth Amendment to the United States Constitution; (2) Violation of Fourth Amendment to the United States Constitution; (3) Violation of Sixth Amendment to the United States Constitution; ( 4)

---

[1] The Complaint also lists the "City of Alameda" as a defendant. The City of Alameda has not appeared in this action and there is no indication that this entity has been served with the complaint. To the extent that this order is dispositive, the Court does not require the consent of the City of Alameda because it has not been served and therefore is not a party within the meaning of 28 U.S.C. § 636(c). See Ornelas v. De Frantz, 2000 WL 973684, *2, n.2 (N.D. Cal. 2000) (citing Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995) (magistrate judge had jurisdiction to dismiss prisoner's civil rights action without consent of the defendants because the defendants had not been served yet and therefore were not parties)

Violation of the Fourteenth Amendment to the United States Constitution; (5) Conspiracy Against Civil Rights; (6) Deprivation of Rights Under Color of Law; (7) Mail Fraud; (8) Wire Fraud; (9) Attempt and/or Conspiracy to Commit Mail Fraud and/or Wire Fraud; (10) Kidnapping, Conspiracy to Kidnap and Using Mail in Furtherance of the Commission of the Offense of Kidnapping; (11) Hostage Taking; (12) Receiving and Possessing Ransom Money; (13) Criminal Street Gang Injunction; (14) Battery; (15) False Arrest and False Imprisonment; (16) Kidnapping; (17) Conspiracy to Falsely and Maliciously Indict Plaintiff for a Crime; (18) Conspiracy to Commit Fraud; (19) Committing Acts Against Plaintiff That Was Injurious to The Due Administration of the Laws; and (20) Violation of California Civil Code §52.1.

Each of the four groups of defendants has filed its own motion to dismiss all 20 of the claims against them on a number of bases. The Court held a hearing on the four motions to dismiss on September 9, 2016. During the hearing, the Court requested additional briefing on the issue of the legality of serving Plaintiff by mail and the parties have provided that briefing. See Dkt. Nos. 76, 77. Having considered all of the briefing provided by the parties and for the reasons stated during the hearing and as follows, the four motions to dismiss are granted with prejudice. A separate judgment will be entered.

## II. LEGAL STANDARD

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

## III. FACTUAL BACKGROUND

2

Plaintiff alleges that, on April 23, 2014, he was the victim of an automobile theft. Compl. ¶ 25. A few minutes later, he exchanged words with the suspected thief who admitted to the theft. Id. A few days later, the suspected thief reported Plaintiff to the Fremont Police, claiming that Plaintiff had victimized the suspected thief. Id.

On or about April 29, 2014, Plaintiff was inside his home in Newark, California. Compl. ¶ 26. He heard a knock at the door and spoke with Fremont Police Officer Michael Ramsey through a screen door. Id. Ramsey told Plaintiff that he was not going to arrest him, but wanted to talk about what happened at the "PK Market," where Plaintiff's car had been stolen. Compl. ¶¶ 19, 26. Plaintiff went on his porch and spoke to Ramsey for about 20 minutes about the car theft. Id. There were also two other Fremont police officers present, as well as two Newark police officers present ("lurking around the side of the house"). Id. During the meeting, Ramsey told Plaintiff that he had spoken with the owner of the PK Market and that he had seen a video of Plaintiff throwing a 20-ounce plastic bottle across the store. Compl. ¶ 28. Plaintiff did not respond to this, and focused on the details of the car theft. According to Plaintiff, the owner of PK Market is the same person who admitted to stealing his car. Id.

At the end of the meeting, Ramsey tried to shake Plaintiff's hand but he refused, and said he would be submitting a report to the Fremont police in the coming weeks. Compl. ¶ 27. Plaintiff later submitted a report to the police about the car theft. Id. The written report that Ramsey submitted to the Alameda County District Attorney following his meeting with Plaintiff did not mention the automobile theft. Compl. ¶ 27. The report recommended that Plaintiff be charged with assault with a deadly weapon, a felony. Compl. ¶ 32. At no time after Ramsey submitted his report did he attempt to arrest Plaintiff. Id.

After Ramsey submitted his report to the Alameda County District Attorney's Office, defendant Assistant District Attorney John Jay prepared, signed and mailed a summons to plaintiff through the U.S. mail. Compl. ¶ 33. The summons did not contain a correct mailing address for Plaintiff, he did not receive the summons, and he had no idea that he was ordered to appear in court for an arraignment on June 27, 2014. Id.; see also Compl. ¶ 9 (Jay should have had Plaintiff's correct address, which was provided by Ramsey). Plaintiff only learned of the

3

summons on July 10, 2014, after he was released from Sheriff's custody on July 8, 2014. Id.

On July 2, 2014, Plaintiff answered a knock at his door. Defendant Newark Police Officer Heckman told Plaintiff that he had a warrant for his arrest. Compl. ¶¶ 20, 34. Plaintiff asked what the warrant was for and was told "assault." Id. Plaintiff made a phone call, got some eye drops, and surrendered to Heckman. Id. Heckman handcuffed Plaintiff and he was put in the back of a police car for about 30 minutes. Compl. ¶ 37. Plaintiff could hear Heckman talking to other officers, and heard him say "(paraphrased) 'I need to confirm the warrant.'" Compl. ¶ 38. Plaintiff was transported to Santa Rita Jail in Dublin by defendant Newark Police Officer Homayoun. Id.; see also ¶ 22. There was an unidentified female civilian observer seated in the police car that appeared as though she was on a date with Homayoun. Compl. ¶ 39. As he took Plaintiff out of the police car, Homayoun told Plaintiff he was arrested for "CPC 240, a misdemeanor." Compl. ¶ 40. Plaintiff later learned that he was arrested for failure to appear. Id.

Plaintiff was processed at Santa Rita Jail, where his name was taken incorrectly, and then corrected. Compl. ¶ 41. Plaintiff spent the first 24 hours in dirty holding cells, was strip searched and encountered prisoners with psychiatric problems and violent prisoners. Compl. ¶ 42. He was screened by medical staff, who told him he would receive his prescription eye drops when he was moved to a housing unit at the jail. Compl. ¶ 43. Despite repeated requests over the next six days, he was not given the prescription medication that he needed to use daily for glaucoma. Compl. ¶¶ 43-46. He was finally given the medication about 12 hours before he was released from custody on July 8, 2014. Compl. ¶ 44.

Plaintiff completed a grievance form describing how his prescription medication was being withheld or otherwise neglected by the Sheriff's Department. Compl. ¶¶ 46-47. Plaintiff attempted to submit the form to defendant County of Alameda Deputy James Linn, but Linn attempted to dissuade him from submitting the grievance form and said he should complain to the sheriff department's medical contractor because the sheriff's department was not responsible for the problem. Compl. ¶ 47. Plaintiff told Deputy Linn that he was told to turn in the form, to which Deputy Linn responded, "You're not very bright are you?" Id.; see also ¶ 23.

On his fifth day in custody, the jail staff told Plaintiff that he had been given the wrong

prisoner identification number when he was processed. Compl. ¶ 48. Despite his willingness to appear in court, Plaintiff was never transported to court while in the custody of the Alameda County Sheriff's Department. Compl. ¶ 9. After being released, Plaintiff learned that a relative had gone to court on his behalf on July 7, 2014, and requested that defendant Judge Richard Keller set bail. Compl. ¶ 50. Plaintiff also learned that defendant Alameda County Deputy District Attorney Christine Saunders had appeared at the Fremont Hall of Justice on July 7, 2014 to try to prevent or hinder his release from custody by arguing that he had failed to appear in court, which Plaintiff alleges was in violation of his right to due process. Compl. ¶¶ 12, 51. Judge Keller signed and issued a no-bail bench warrant for Plaintiff's failure to appear in court on June 27, 2014, despite allegedly improper and faulty service of the summons by mail. Compl. ¶¶ 13, 52.

Plaintiff was charged with a misdemeanor offense of simple assault, an offense Plaintiff characterizes as a cite-and-release misdemeanor. Compl. ¶¶ 52-53. Plaintiff alleges that he was never charged with battery or any other crime that would have given defendants cause to arrest and imprison him. Compl. ¶ 53. Judge Keller did not exonerate bail until about 15 months after it was posted. Id. Plaintiff was never convicted of any crime as a result of the July 2, 2014 arrest. Compl. ¶ 54.

Plaintiff also alleges that the Alameda County Sheriff's Department, the City of Fremont, and the City of Newark "choose[] to partner with entities that are outside the[ir] control." Compl. ¶¶ 6-7. Plaintiff alleges that defendant District Attorney O'Malley supervised the Alameda County District Attorney's Office, including Defendant Jay, and that Jay in turn supervised Defendant Deputy District Attorneys Saunders and Hernandez. Compl. ¶¶ 9-10. Plaintiff alleges that District Attorney Hernandez openly admitted in a court proceeding that he had contacted Plaintiff's properly subpoenaed defense witnesses during a criminal trial and told them not to come to court. Compl. ¶ 11.

City Manager defendants Muranishi, Becker, and Diaz are generally alleged to be responsible for directing, supervising and managing all activities and employees (including the chiefs of police) for their respective municipalities but there are other no factual allegations specific to them. Compl. ¶¶ 14, 16, 17. Police Chief defendants Ahern, Lucero, and Leal are

1   generally alleged to be responsible for policy creation and implementation within their respective

2   police departments but there are no other factual allegations specific to them.  Compl. ¶¶ 15, 18,

3   20.

4   **IV.    DISCUSSION**

5          **A.    The Complaint Is Dismissed For Violation of Rule 8(a) and Failure
               to Plausibly Allege a Conspiracy**

6

7          Plaintiff asserts all twenty of his claims against all defendants without any attempt to

8   distinguish between the individual actions or potential liability of any one defendant or group of

9   defendants.  Plaintiff's basic theory of liability for all defendants, as explained to some extent in

10  his oppositions to the motions to dismiss but not clearly articulated in the complaint itself, appears

11  be based on a conspiracy theory.  Plaintiff contends without explanation that all of the

12  municipalities had a pattern, practice or policy of working together to violate civil rights as part of

13  an unidentified and unexplained conspiracy.  See Compl. ¶ 64.  Plaintiff argues that all of the

14  defendants were members of this alleged conspiracy, and therefore contends that they are all

15  somehow liable for the acts of all others.

16         To state a conspiracy claim under 42 U.S.C. §1983, "a plaintiff must 'demonstrate the

17  existence of an agreement or meeting of the minds' to violate constitutional rights. . . . 'Such an

18  agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as

19  the actions of the defendants.' . . . To be liable, each participant in the conspiracy need not know

20  the exact details of the plan, but each participant must at least share the common objective of the

21  conspiracy."  Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (citing

22  Mendocino Environ. Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999); Franklin

23  v. Fox, 312 F.3d 423, 441 (9th Cir. 2002)).  In other words, "[t]he defendants must have, 'by some

24  concerted action, intended to accomplish some unlawful objective for the purpose of harming

25  another which results in damage.'"  Mendoncino Environ. Center, 192 F.3d at 1301. The Ninth

26  Circuit applies a heightened pleading standard to § 1983 conspiracy claims and bare allegations

27  that a defendant conspired with another are insufficient to state a claim.  See Harris v. Roderick,

28  126 F.3d 1189, 1195 (9th Cir. 1997); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1998).

United States District Court
Northern District of California

In addition to the specific pleading issues discussed below, an overarching problem with Plaintiff's entire theory of the case is that he does not allege any facts to support a conspiracy theory that could give rise to liability for any defendant for the acts of others, or otherwise explain the connection between the multiple defendants.  See Ennis v. City of Daly City, 756 F. Supp. 2d 1170, 1175-76 (N.D. Cal. 2010) (citing United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (fact that defendant signed citizen's arrest form and made false statements therein, which lead to the arrest, was insufficient to show a conspiracy to violate the plaintiff's civil rights against unlawful seizure or excessive force).  At most, Plaintiff alleges a series of events:  Officer Ramsey did not include information about an earlier theft of his car when he submitted a report to the DA's Office, Judge Keller issued an arrest warrant due to the improper service of a summons prepared by Alameda County DA Jay,  Officer Heckman arrested him, Officer Homayoun transported and delivered him to jail, DA Saunders represented to Judge Keller that service of the summons had been proper, he was never taken to court during his jail time, DA Hernandez told witnesses not to show up on the first day of trial, and Plaintiff was never charged with a felony or convicted of a crime.  Even taking all of this as true, Plaintiff improperly lumps together all claims and all defendants in a confusing manner on the basis that "one thing led to another" and the municipalities somehow "work together" without explaining how any of the individuals or events are connected.

A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)."  Gauvin v. Trombatore, 682 F.Supp. 1067, 1071 (N.D. Cal.1988).  "Specific identification of the parties to the activities alleged by the plaintiffs is required . . . to enable the defendant to plead intelligently."  Reyes ex rel. Reyes v. City of Fresno, 2013 WL 2147023, at *4 (E.D. Cal. May 15, 2013).  Here, the entire complaint can be dismissed for failure to comply with Rule 8(a), because it is exceedingly confusing as to why Plaintiff believes that all defendants have liability for actions in which they were entirely uninvolved beyond his unexplained conspiracy theory.

Generally, an initial dismissal under Rule 8(a) may be without prejudice because a plaintiff might arguably be able to amend to more clearly articulate the basis of which claims apply to

which defendants and why. However, when questioned about this pleading defect during oral argument, Plaintiff could not articulate any additional facts to support a conspiracy theory beyond what was stated in his complaint and opposition papers, or otherwise explain the connection between the various defendants. The gist of Plaintiff's conspiracy theory, as articulated in his oppositions and during oral argument, appears to be that all of the defendants somehow "conspired" with each other solely on the basis that the various municipalities had an alleged practice or policy of working together on some law enforcement issues and therefore all defendants are liable for the actions of all other defendants as co-conspirators. However, even when directly asked to expand on this theory, Plaintiff was unable to articulate any facts that might plausibly suggest any meeting of the minds or common objective between any of the defendants to violate his rights. The vague and amorphous suggestions contained in Plaintiff's papers and stated during oral argument are insufficient to support a conspiracy theory. Because there is no basis to believe that Plaintiff could amend his complaint to allege a conspiracy, all of Plaintiff's claims against all defendants that rely on a conspiracy theory are dismissed with prejudice.

**B.      Claims Against Defendants Named Solely Based on Managerial Roles Are Dismissed With Prejudice**

**1.      No Liability For Fremont City Manager Diaz or Police Chief Lucero**

There are no allegations of wrongful conduct specific to Fremont City Manager Diaz or Police Chief Lucero so all of the claims against them must be dismissed fail to state a claim. Plaintiff relies solely on his allegations that Diaz and Lucero are policy makers who, by mere virtue of their position, somehow created municipal liability based on an unidentified pattern or practice and are therefore liable. However, the conclusory allegations in the complaint are plainly insufficient to show any involvement by Diaz or Lucero in any of the alleged violations. Further, as discussed below, to the extent that these individuals are alleged to be responsible for municipal policy-making for purposes of Monell liability, there are insufficient allegations that they were responsible for any specific County policy or practice that resulted in a deprivation of Plaintiff's rights. When questioned during oral argument, Plaintiff conceded that he could not add any additional facts relating to these defendants if he were granted leave to amend. Therefore, all of

8

the claims against these Fremont defendants are dismissed with prejudice for failure to state a claim.[2]

### 2. No Liability for Alameda County Sheriff Ahern, County Administrator Muranishi or District Attorney O'Malley

Likewise, the claims against Alameda County Sheriff Ahern, County Administrator Muranishi, and District Attorney O'Malley must be dismissed because there are only vague, conclusory allegations that they were in supervisory positions, without any specific facts connecting them to the events alleged. <u>See</u> Compl. ¶¶ 10, 14, 15. Plaintiff contends that his general allegations that these individuals were supervisors and policy-makers are sufficient. Again, Plaintiff's theory appears to involve some sort of conspiracy to violate his rights, but there are no allegations as to how any of these individuals were involved in a conspiracy and there are insufficient allegations that they were responsible for any specific County policy or practice that resulted in a deprivation of Plaintiff's rights. When questioned during oral argument, Plaintiff could not identify any additional facts relating to these defendants that he could add if he were granted leave to amend. Therefore, all of the claims against these County defendants are dismissed with prejudice for failure to state a claim.

### 3. No Liability For Newark City Manager Becker or Police Chief Leal

As with the defendants discussed above, there are no allegations in the complaint specific to any actions that Newark City Manager Becker or Police Chief Leal took beyond their alleged supervisory roles within the municpality. Compl. ¶ 16, 20. Plaintiff counters that his allegations that they were policy-makers are sufficient, because he also alleges that the City of Newark had a policy of partnering with other municipalities that resulted in a violation of his rights. However, for the reasons stated above, these general, vague and conclusory allegations are insufficient to show any liability for Becker or Leal for any alleged constitutional violation. When questioned during oral argument, Plaintiff could not identify any additional facts relating to these defendants

United States District Court
Northern District of California

---

[2] Any claim against Chief Lucero in his official capacity is redundant of Plaintiff's claims against the City of Fremont and could also be dismissed on this basis. <u>See Arres v. City of Fresno</u>, 2011 WL 284971 at *6 (E.D. Cal. 2011) (proper for court to "dismiss the official-capacity officer, leaving the local government entity as the correct defendant" where both are named).

that he could add if he were granted leave to amend.  The claims against these Newark Defendants are also dismissed with prejudice.

## C.     <u>Monell</u> Claims Against Municipalities Are Dismissed With Prejudice

A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 694 (1978). Rather, when an individual sues a municipality for violation of a constitutional right, the municipality is liable only if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." <u>Id</u>. at 694-695; <u>see also Lee v. City of Los Angeles</u>, 250 F.3d 668, 681-682 (9th Cir. 2001) ("[T]o prevail on their § 1983 claims, plaintiffs must have sufficiently alleged that: (1) they were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which 'amount[] to deliberate indifference' to their constitutional rights; and (3) that these policies are the 'moving force behind the constitutional violation.") (internal quotations omitted).  A plaintiff must therefore "specify the content of the policies, customs, or practices the execution of which gave rise to [the plaintiffs] constitutional injuries" in order to survive the motion to dismiss stage.  <u>Mateos-Sandoval v. Cnty. of Sonoma</u>, 942 F.Supp.2d 890, 900 (N.D. Cal. 2013), affd sub nom. <u>Sandoval v. County of Sonoma</u>, 591 F. Appx. 638 (9th Cir. Mar. 27, 2015); <u>Marotz v. City of San Francisco</u>, 2014 WL 1571623, at *7 (N.D.Cal. Apr. 18, 2014) (dismissing allegations that were "little more than conclusory," and reasoning that "bare allegations that government officials' conduct conformed to some unidentified government policy, previously acceptable in the Ninth Circuit, are no longer sufficient to plead a claim for municipal liability").

Plaintiff has not articulated, in his complaint, oppositions or during oral argument, any particular policy, custom or practice of any of the defendant municipalities that was the "moving force" behind any alleged deprivation of his constitutional rights.  <u>See Canton v. Harris</u>, 489 U.S. 378, 389 (1989) ("municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation").   The allegations in the complaint allege only in the most conclusory manner that there was some sort of policy or practice, but do not connect that

United States District Court
Northern District of California

1  allegation to any alleged deprivation of rights.

2      As with his other claims, Plaintiff appears to base his theory of municipal liability on

3  somewhat of a cascade effect – that Alameda County DA Jay improperly prepared and mailed a

4  summons, which resulted in an improper arrest and incarceration as well as an improper no bail

5  bench warrant and bail requirement.  However, Plaintiff's complaint is devoid of any allegations

6  of a specific policy or practice that was the moving force behind any alleged constitutional

7  deprivation.  The single mention of an Alameda County custom or policy at paragraph 98 of the

8  complaint is devoid of facts and cannot support <u>Monell</u> liability.  Likewise, Plaintiff's bald

9  contention that the municipalities "worked together" in the law enforcement context is

10  insufficient.  <u>See</u> <u>Bd. Of the County Comm'Rs v. Brown</u>, 520 U.S. 397, 404 (1997) ("it is not

11  enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.

12  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the

13  'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action

14  was taken with the requisite degree of culpability and must demonstrate a direct causal link

15  between the municipal action and the deprivation of federal rights.").  Moreover, a single alleged

16  incident of unconstitutional activity is insufficient to create <u>Monell</u> liability, unless there is proof

17  that it was caused by an unconstitutional municipal policy.  <u>Avalos v. Baca</u>, 596 F.3d 583, 588

18  (9th Cir. Cal. 2010).  Plaintiff's allegations regarding one incident of allegedly insufficient service

19  of process and a resulting arrest and incarceration are insufficient to show any policy with respect

20  to these events.  When questioned during oral argument, Plaintiff could not identify any additional

21  facts he would add to support his claims against the municipalities if granted leave to amend.

22  Plaintiff's §1983 claims against the municipalities are dismissed with prejudice.

23

24      **D.      All Federal Claims Against The Fremont Defendants Are Dismissed With
             Prejudice Based on the Statute of Limitations**

25      In addition to dismissal of the claims against the City of Fremont, City Manager Disaz and

26  Chief Lucero with prejudice for the reasons stated above, the Fremont Defendants argue that all of

27  Plaintiff's claims against them are barred by the applicable two-year statute of limitations and

28  should be dismissed with prejudice on this basis.  <u>See Wilson v. Garcia</u>, 471 U.S. 261, 275

11

1   (1985); Butler v. Nat'l Cmty. Renaissance of California, 766 F.3d 1191, 1198 (9th Cir. 2014) (§

2   1983 does not contain its own statute of limitations so federal courts apply the forum state's

3   applicable statute of limitation); Cal. Code Civil Proc. §335.1 (statute of limitations for injury

4   caused by the wrongful conduct of another is two years).

5          As discussed above, there are no allegations of any specific conduct by Fremont City

6   Manager Diaz or Police Chief Lucero beyond their general status as decision makers and

7   managers and these allegations are insufficient to show any potential liability.  The only

8   allegations relating to Fremont Officer Ramsey show that his contact with Plaintiff was limited to

9   a visit to Plaintiff's house on April 29, 2014, when Ramsey interviewed Plaintiff but did not arrest

10  him.  Compl. ¶¶ 29-32.  Further, Ramsey's report following his interview with Plaintiff was

11  necessarily completed by May 19, 2014, when the Alameda County District Attorney's ("DA")

12  Office issued its summons.  Thus, according to the Fremont Defendants, the two-year statute of

13  limitations for all claims against them based on Ramsey's actions expired on April 29, 2016 (or at

14  least by May 19, 2016) but the complaint was not filed until May 23, 2016.

15         Plaintiff counters that his claims did not accrue until at least July 2, 2014, when he was

16  arrested (by City of Newark officers, not by Fremont Officer Ramsey or any other Fremont

17  Defendant) or as late as April 22, 2016, when he contends that the Alameda County DA's Office

18  ended its criminal prosecution of him.[3]  Plaintiff argues that Ramsey's act in filing a "false" report

19  was what led to his subsequent arrest and the violation of his rights, so his claim did not accrue

20  until later.  Notably, however, there are no allegations relating to the end of criminal prosecution

21  on April 22, 2016 in the complaint, so Plaintiff cannot currently base an argument that the statute

22  of limitations was tolled until that date without amending the complaint.  However, giving

23  Plaintiff the benefit of the doubt and presuming that he could amend his complaint in good faith to

24  _____

25  [3] As with many of the "facts" Plaintiff relies on, allegations relating to the ending date of
    Plaintiff's criminal prosecution are not contained in Plaintiff's complaint but instead in his
26  opposition papers.  On a motion to dismiss the Court is limited to the face of the complaint.
    However, because Plaintiff is appearing pro se and in order to give him every benefit of the doubt,
27  the Court proceeds on the assumption that Plaintiff could amend his complaint in good faith to add
    the additional facts contained in his oppositions and asserted during oral argument.  Therefore,
28  wherever possible the Court has taken Plaintiff's extrinsic allegations into account and considered
    whether they might alter the Court's conclusions if appropriately pled, in coming to its decision.

add this additional fact, it would not help Plaintiff because there is no plausible basis for applying the ending date of his criminal prosecution as the accrual date for his claims against any of the Fremont Defendants, including Ramsey. Plaintiff's position seems to rest on an erroneous belief that the statute of limitations for all defendants would be triggered on the latest date of all of the events relating to his criminal case (including those not stated in his complaint) in light of some overarching conspiracy, and was not triggered by the actions of each individual defendant as to that defendant. However, as discussed above, Plaintiff has not and cannot assert a plausible conspiracy theory based on the facts alleged in the complaint and as articulated by Plaintiff in his opposition papers and during oral argument. The Fremont Defendants are correct that the two-year statute of limitations ran on Plaintiff's claims against them prior to his filing the complaint. All federal claims against the Fremont Defendants are dismissed with prejudice on this basis.

Moreover, even taking as true Plaintiff's allegations that Ramsey's report left out information about the theft of his car that proceeded the event in question (apparently throwing a plastic bottle at the alleged thief) in the PK Market and recommended that Plaintiff be charged with a felony, Plaintiff was unable to articulate in his papers or during oral argument how this alleged omission was material, let alone exculpatory, or otherwise led to his arrest or harmed him. At most, background information about a car theft might be relevant to Plaintiff's motive for a subsequent assault, but Plaintiff has put forward no plausible argument as to how it would be exculpatory such that its omission might violate his rights.

Finally, the Fremont Defendants argue that the "[fi]ling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." See Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981), overruled in part on other grounds by Beck v. City of Upland, 527 F.3d 853 (9th Cir. 2008); Barlow v. Ground, 943 F.2d 1132, 1137 (9th Cir. 1991); Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1991); McSherry v. City of Long Beach, 584 F.3d 1129, 1137 (9th Cir. 2009) (quoting Beck v. City of Upland, 527 F.3d 853, 865 (9th Cir. 2008) ("A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials

and the harm suffered by a constitutional tort plaintiff. . . . precluding suit against the officials who made an arrest or procured a prosecution.'").  Though the presumption of independent prosecutorial judgment can be rebutted by showing that the prosecutor relied on a misrepresentation or omission in a police report, here there is no indication that the alleged omission was exculpatory.  Further, Plaintiff alleges that Ramsey's report recommended that Plaintiff be charged with a felony, but instead he was only charged with a "cite and release" misdemeanor.  See Compl. ¶ 52.  This demonstrates that the prosecutor exercised independent judgment, did not rely on Officer Ramsey's report, and in fact charged Plaintiff with a *lesser* crime than Ramsey recommended.  For this additional reason, the accrual date for Plaintiff's claims against the Fremont Defendants does not extended beyond Ramsey's personal alleged involvement with Plaintiff which ended at least by May 19, 2014, and Plaintiff did not file his complaint for more than two years thereafter.

### E.  All Federal Claims Against the County of Alameda Defendants Are Dismissed With Prejudice

The County Defendants move to dismiss all of the federal claims against them on a number of bases.  For the reasons discussed above, the claims against the County of Alameda, DA O'Malley, County Administrator Muranishi and Sheriff Ahern are dismissed with prejudice for failure to state a claim.  The claims against DAs Hernandez, Saunders and Jay and Deputy Linn are discussed below.

#### 1.  Prosecutorial Immunity Applies to DAs Hernandez, Saunders and Jay

The County Defendants argue that DAs Hernandez, Saunders and Jay are entitled to either Eleventh Amendment,[4] prosecutorial, and/or qualified immunity.  See Pitts v. County of Kern, 17 Cal.4th 340, 362 (discussing district attorneys as actors for the State and not § 1983 "persons"); County of Los Angeles v. Superior Court, 181 Cal.App.4th 218, 233-34 (2009) (same); Van de

---

[4] Plaintiff argues that members of the Alameda County DAs Office are not employed by the State of California, so Eleventh Amendment immunity does not apply.  As the County Defendants do not contradict this, or otherwise focus on Eleventh Amendment immunity, this Order will not address it.

United States District Court
Northern District of California

Kamp v. Goldstein, 555 U.S. 855, 861 (2009) (noting that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant, but qualified immunity applies to a prosecutor giving advice to police during a criminal investigation or makes statements to press); see also generally Imbler v. Pachtman, 424 U.S. 409 (1976).

### a. Absolute Prosecutorial Immunity Applies

"Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts." Lacey v. Maricopa County, 693 F.3d 896, 912 (9th Cir. 2011); see also Milstein v. Cooley, 257 F.3d 1004, 1007 (9th Cir. 2001) ("Specifically, absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits; (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court; (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit; and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability") (internal citations omitted).

Taking Plaintiff's allegations as true, DA Jay is alleged to have prepared, signed and then improperly mailed a summons, and may also be DA Hernandez's supervisor who advised him to tell witnesses not to appear on the first day of trial. See Compl. ¶ 9. DA Hernandez is alleged to have called Plaintiff's witnesses and told them not to come to court after speaking to a supervisor. Compl. ¶ 11. DA Saunders is alleged to have appeared in court to argue against Plaintiff's release from custody despite an improperly served summons. Compl. ¶ 12. The County Defendants persuasively argue that the allegations against each of these DAs are conclusory, but also show that all of these individuals' alleged conduct was done in "prepar[ing] . . . to prosecute crimes" and they are therefore shielded by absolute prosecutorial immunity. See County of Los Angeles v. Superior Court, 181 Cal.App.4th 218, 233-34 (2009); Burns v. Reed, 500 U.S. 478, 485-486 (1991).

United States District Court
Northern District of California

Plaintiff counters that the County DAs are not entitled to absolute prosecutorial immunity because they were somehow involved in a "malicious prosecution" based on Fremont Officer Ramsey's report, they improperly stated that a summons had been properly served which resulted in his incarceration, and they violated his constitutional rights. He argues that these actions are outside of the scope of their duties as DAs and so they are not absolutely immune. However, all of the actions the DAs are alleged to have taken -- including preparing and serving a summons, preparing for trial, and appearing in court to argue in connection with a criminal prosecution -- are core duties of DAs and an integral part of the prosecutorial process. Therefore, unqualified prosecutorial immunity applies to all three of the DAs and the §1983 claims against them are dismissed with prejudice on this basis.[5]

### b. Qualified Immunity Applies

Alternatively, even if absolute prosecutorial immunity did not apply, qualified immunity applies to the DAs' conduct and bars Plaintiff's federal claims against them. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 494-95 (1991). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

---

[5] Though neither side addressed this, Plaintiff's state law claims against the DAs also appear to be barred by state law immunities. See Cal. Gov't Code § 821.6 ("A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."); see also Cappuccio, Inc. v. Harmon, 208 Cal.App.3d 1496, 1500 (1989) (stating that the prosecutorial immunity is entitled to an "expansive interpretation."). Plaintiff does not allege any statutory exception to this immunity.

Plaintiff argued in his opposition brief that none of the County DAs are entitled to qualified immunity because the City of Newark opportunistically chose when to serve an arrest warrant on him so that he would stay in jail longer due to an intervening holiday.  See Dkt. No. 43 at 20.  Plaintiff's reasoning and how this relates to the County Defendants is entirely unclear, but based on this theory he argues that the DAs' alleged conduct fell outside of their duties.  He contends that "due to the minimum standard of plain incompetence, none of the defendants involved in the warrant's issuance have qualified immunity."  Id. at 21 of 27.  Plaintiff's theory relating to opportunistic service of an arrest warrant by another municipality does not appear in the complaint, but even if he were permitted leave to amend to include this factually unsupported theory, it does not relate to the DAs' actions or impact their entitlement to qualified immunity.

### i.    DA Jay

With respect to DA Jay, the County Defendants argue that the allegations against him, including issuing a faulty summons and perhaps directing Hernandez to tell Plaintiff's witnesses not to appear in court, do not rise to the level of a constitutional violation and a reasonable person could view his actions as careless but not a knowing violation of Plaintiff's constitutional rights.  Plaintiff responds that DA Jay is a highly experienced lawyer and his actions were not merely careless but grossly negligent when he improperly mailed a criminal summons to Plaintiff's incorrect address, rather than having it personally served on him, in violation of California Penal Code § 816(a) so he is not entitled to qualified immunity.

The document in question, written on DAs Office letterhead, dated May 19, 2014, and signed by DA Jay, states that "A criminal complaint and summons has been filed against you in the above-entitled court.  You are required to appear on June 27, 2014 at 2:00PM in Department 604. Failure to appear will result in a warrant being issued for your arrest."  The document contains a declaration of service by U.S. Mail, and cites California Civil Code sections 1013A(3) and 2015.5.  See Dkt. No. 1 at 26.  Because the purely legal issue of whether this document was properly served on Plaintiff was not briefed in any depth by the parties, the Court asked for further briefing of no more than three pages each on the propriety of serving the document attached to Plaintiff's complaint, which he relies on and refers to throughout his complaint as a criminal

17

"summons," by mail rather than in person.

The County Defendants argue that the May 19, 2014 document is not a criminal "summons" as Plaintiff claims, but instead is merely a courtesy letter from the DAs Office. They point out that Plaintiff alleges that he was charged with a misdemeanor (Compl. ¶¶ 1, 53) and there is no such thing as a misdemeanor "summons" in Alameda County. Indeed, there is no requirement that a criminal defendant charged with a misdemeanor receive *any* notice prior to an arrest warrant being issued. See Cal. Penal Code § 1427(a) ("When a complaint is presented to a judge in a misdemeanor or infraction case appearing to be triable in the judge's court, the judge must, if satisfied therefrom that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, issue a warrant for the arrest of the defendant."). According to the County Defendants, the arraignment letter in question was merely a courtesy notice, and it is thus irrelevant how it was served and whether Plaintiff received it or not.

Plaintiff responds that the County Defendants' position is "frivolous" [6] because it is undisputed that he was never properly served with a criminal summons which might have served as the basis for Judge Keller's later "no-bail bench warrant" for failure to appear at the June 27, 2014 arraignment. Plaintiff relies on California Penal Code § 813(a), which relates to criminal complaints charging a felony, and provides that upon a finding of probable cause a magistrate shall issue an arrest warrant, "except that, up[on the request of the prosecutor, a summons instead of an arrest warrant shall be issued." Plaintiff argues without citation to any authority that this felony code provision also applies to misdemeanors, and argues that the May 19, 2014 letter shows that a criminal summons, rather than an arrest warrant, was issued pursuant to Section 813(a) but never served as required. See Dkt. No. 1 at 26 (May 19, 2014 letter stating that a "criminal complaint *and summons* has been filed against you") (emphasis added). According to

---

[6] As part of his response, Plaintiff requests that the Court sanction the County Defendants' counsel for his supplemental brief, which Plaintiff characterizes as frivolous. Dkt. No. 77 at 8. The County Defendants' filed a separate opposition to the request for sanctions, correctly pointing out that it is procedurally improper and meritless. Dkt. No. 80. Because the County Defendants' supplemental brief was filed at the Court's request and is not frivolous, no sanctions are warranted.

Plaintiff, personal service of a summons issued pursuant to Section 813(a) is required by California Penal Code § 816(a), which provides that a "summons issued pursuant to Section 813 [which relates to felony complaints] shall be served by any peace officer . . ."

Importantly, however, Section 816 does not specify whether the service must be in person or may be by mail. Therefore, even accepting as true Plaintiff's unlikely premise that a summons was requested or issued pursuant to Section 813 even though he was not charged with a felony, this does not mean that the DAs Office knowingly violated statutory law by failing to personally serve him with such a summons. Moreover, as persuasively explained by the County Defendants, they had no statutory obligation to request or serve a summons or otherwise notify him of the misdemeanor charge against him prior to the issuance of an arrest warrant in accordance with the misdemeanor procedure of California Penal Code § 1427(a).[7]

In <u>Smith v. City of Irvine</u>, 2010 U.S. Dist. LEXIS 74476 (C.D. Cal. 2010), the court was presented with arguments similar but not identical to those being made by Plaintiff here - that a municipality had an illegal custom, policy or practice with respect to the service of criminal summonses when it notified the plaintiff by an "arraignment letter" of an arraignment hearing. The court held that the criminal docket reflected that the state court had not issued a criminal summons for the plaintiff, and instead an "arraignment letter" entitled "Notice of Complaint Filing" had issued. The court held that an "arraignment letter is not a summons" and is "not a statutorily specified method of notifying a criminal defendant of an arraignment and there are no statutory requirements for its service." <u>Id</u>. at *22-24. Thus, the municipality could not be liable to plaintiff for any deficient policy relating to the service of criminal summonses which would be inapplicable to the plaintiff in the case before it where no summons was ever issued. <u>Id</u>.[8] <u>Smith</u> is

---

[7] Plaintiff's supplemental brief is eight pages long. <u>See</u> Dkt. No. 77. The Court expressly limited the supplemental briefs to three pages during oral argument and in the Minute Order that followed. Nevertheless, because Plaintiff claims to have been confused about the page limit (<u>see</u> Dkt. No. 79) and in order to give him every benefit of the doubt, the Court has read and considered Plaintiff's supplemental brief in its entirety.

[8] The County Defendants also correctly argue that, regardless of their actions with respect to the arraignment letter, they cannot be liable for Judge Keller's subsequent decision to issue a "no bail bench warrant" for Plaintiff's failure to appear because they took no part in that purely judicial decision.

somewhat distinguishable in that it was motion for summary judgment and the underlying criminal docket reflecting the lack of issuance of a criminal summons was before the court. Nevertheless, <u>Smith</u>'s consideration of the role of "arraignment letters" and its holding relating to the lack of any statutory service requirement relating to them is instructive. The May 19, 2014 document attached to the complaint appears to be almost identical to the document at issue in <u>Smith</u>, and appears to be an arraignment letter for which there are no statutory service requirements. Even taking Plaintiff's allegations as true that a criminal summons was issued, there has been no showing that Plaintiff's right to have such a summons personally served on him was clearly established or that DA Jay knew or should have known that mailing such a document would violate Plaintiff's rights. Therefore, qualified immunity applies to DA Jay.

### ii. DA Hernandez

With respect to DA Hernandez, there is no allegation that he violated Plaintiff's constitutional rights because, even taking as true the allegation that he admitted to telling Plaintiff's witnesses not to appear in court after speaking with his supervisor (Compl. ¶ 11), there is no injury alleged to have resulted from this conduct. In his opposition, Plaintiff responds that "[t]he nature of the injury is self-evident" and "will be determined at trial" though he admits that he was never convicted of any crime. <u>See</u> Dkt. No. 43 at 17. Thus, based on the allegations in his papers, Plaintiff was not harmed by DA Hernandez's actions and therefore cannot state a constitutional claim against him and qualified immunity -- in addition to absolute prosecutorial immunity -- applies. When questioned further on this issue during oral argument, Plaintiff mentioned for the first time that DA Hernandez's act of telling witnesses not to appear on the first day of trial harmed him by extending his criminal trial by one day which resulted in approximately $800.00 in additional legal fees to Plaintiff. However, even if Plaintiff were allowed to amend his complaint to allege this harm, his claims based on DA Hernandez's alleged actions would still fail based on absolute prosecutorial immunity. Therefore, leave to amend to include this allegation of financial harm would be futile.

### iii.     DA Saunders

With respect to DA Saunders, her alleged conduct also does not support any constitutional violation.  It is undisputed that Plaintiff had previously failed to appear in court and there is no plausible allegation that DA Saunders had any reason to believe the summons was improper or that she was doing anything other than her job of diligently prosecute a criminal case.  Plaintiff responds without explanation or factual support that she was a "vital member of the conspiracy" who should have known service of the summons was improper but yet argued to Judge Keller that Plaintiff should remain in jail for failure to appear.  As discussed elsewhere, Plaintiff's conspiracy theory lacks any factual support and a claim against DA Saunders may not be based on her participation in an unidentified conspiracy.  Other than a barebones assertion, there is no indication that DA Saunders had any reason to know that service of the summons was faulty, and at most she truthfully argued in court that Plaintiff failed to appear.  Even if unqualified prosecutorial immunity did not apply to her, which it does, all claims against DA Saunders are dismissed with prejudice on the basis of qualified immunity because Plaintiff cannot plausibly allege that she should have known her actions violated his rights.

### 2.     Deputy Linn

Plaintiff has not and cannot state a §1983 claim against Deputy Linn.  The allegations of the complaint specific to Deputy Linn are that he unsuccessfully attempted to dissuade Plaintiff from filing a grievance about his prescription eye medication while incarcerated, and then insulted him.  Compl. ¶¶ 23, 47.  The County correctly argues that there is no allegation of harm resulting from this alleged conduct; i.e., there is no allegation that Plaintiff did not file a grievance, or that it impacted his alleged failure to get medical treatment.  In his opposition and during oral argument, Plaintiff also argued that Deputy Linn's act of accepting his grievance form somehow resulted in him being placed on a medical hold which prevented him from appearing in court for an arraignment.  Id. See Dkt. No. 43 at 25.  However, when questioned about this theory during oral argument, Plaintiff could not articulate any plausible link between his need for eye drops and/or the filing of a grievance and the timeliness of his transport to court.  There is simply no logical inference that could be drawn between Deputy Linn's actions and any of the harm Plaintiff

21

alleges. The federal claims against Deputy Linn are dismissed with prejudice.

**F.    The Federal Claims Against Judge Keller Are Dismissed With Prejudice**

**1.    Lack of Jurisdiction**

Judge Keller first argues that the Court lacks subject matter jurisdiction over all of the claims against him. Judge Keller's arguments are persuasive and dismissal based on the <u>Rooker-Feldman</u> doctrine appears to be appropriate. Therefore the Court need not reach the issues of whether the Eleventh Amendment bars Plaintiff's claims against Judge Keller or whether he lacks standing to assert his claims.

Judge Keller argues that the <u>Rooker-Feldman</u> doctrine precludes this Court's exercise of jurisdiction over all of Plaintiff's claims against him because their resolution would require this Court to review Judge Keller's decisions to sign and issue a bench warrant and require bail, the only alleged actions that form the basis for Plaintiff's claims against Judge Keller. <u>See</u> Compl. ¶¶ 13, 52. Under the <u>Rooker-Feldman</u> doctrine, lower federal courts lack subject matter jurisdiction over appeals of state court judgments. <u>See Noel v. Hall</u>, 341 F.3d 1148, 1154-55 (9th Cir. 2003) (discussing emergence of the doctrine). This rule applies "even when the challenge to the state court decision involves federal constitutional issues." <u>Worldwide Church of God v. McNair</u>, 805 F.2d 888, 891 (1983) (<u>citing District Court of Columbia Court of Appeals v. Feldman,</u> 460 U.S. 462, 484-86 (1983).) However, the <u>Rooker-Feldman</u> doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005); <u>see also id</u>. at 293 (a district court is not barred from exercising subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court"). The <u>Rooker-Feldman</u> doctrine is limited to situations where a plaintiff alleges a de facto appeal by both asserting errors by the state court and seeking relief from the state court judgment as a remedy. <u>See Exxon Mobil</u>, 544 U.S. at 283; <u>Kougasian v. TMSL, Inc.</u>, 359 F.3d 1136, 1140, 1143 (9th Cir. 2004) (<u>Rooker-Feldman</u> doctrine did not apply because the plaintiff had not alleged that she had been harmed by legal

errors made by the state court; rather she alleged that the defendants' wrongful conduct caused her harm). In <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 855, 859 (9th Cir. 2008), the Ninth Circuit stated that to determine whether an action is barred by <u>Rooker-Feldman</u>, courts examine whether federal claims are "'inextricably intertwined' with the state court's decision such that adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules. . . ."

Judge Keller argues that Plaintiff's federal claims are "inextricably intertwined" with his decisions regarding the alleged warrant and bail setting, so this Court is precluded from reconsidering these issues. <u>See Lefcourt v. Superior Court</u>, 63 F.Supp.2d 1095, 1098 (N.D. Cal. 1999) ("the district court does not have jurisdiction if it cannot evaluate the constitutional claims without conducting a review of the state court's legal determinations in a particular case"). Plaintiff counters that the <u>Rooker-Feldman</u> doctrine does not apply here because he is not asking this Court to review a state court decision and he was "not injured due to a Superior Court decision." <u>See</u> Dkt. No. 41 at 11-12. Instead, according to Plaintiff, Judge Keller was acting outside the scope of his judicial duties because he did not have the authority or jurisdiction to cause Plaintiff to be "abducted" and "kidnapped" and then require a $5,000 "ransom" in violation of Plaintiff's rights. <u>Id</u>. at 13. Thus, according to Plaintiff, the issue is not whether or not Judge Keller got it right or wrong in making his judicial decisions, but whether or not his civil rights were violated.[9]

Judge Keller responds that Plaintiff's characterization of the events in question does not alter the fact that he was acting in his judicial capacity in signing a no-bail bench warrant and requiring that bail be posted for failure to appear. Compl. ¶¶ 13, 52. While this case does not fit neatly within the <u>Rooker-Feldman</u> doctrine, in order for this Court to determine whether he violated Plaintiff's civil rights, it would likely be necessary to re-examine whether Judge Keller should have issued the warrant and set bail in the first instance -- precisely the type of de-facto

---

[9] In this content, Plaintiff argues that he could not have sought appellate review of Judge Keller's decisions in state court because his injuries could not have been corrected in that forum, but provides no explanation for this point.

appeal that the doctrine precludes. Therefore, arguably the <u>Rooker-Feldman</u> doctrine prevents this Court from exercising jurisdiction over the claims against Judge Keller. However, in addition to dismissal based on the <u>Rooker-Feldman</u> doctrine, the claims must be dismissed with prejudice on the basis of judicial immunity as discussed below.

### 2.    Absolute Judicial Immunity

Even if the <u>Rooker-Feldman</u> doctrine did not apply and this Court had jurisdiction over the federal claims against Judge Keller, all of Plaintiff's claims against him are dismissed with prejudice because he is entitled to absolute judicial immunity as all of the acts attributed to him were performed in his official capacity as a judge.

"[J]udges of courts of superior or general jurisdiction are not liable in civil actions for their judicial acts." <u>Stump v. Sparkman</u>, 435 U.S. 349, 355-56 (1978). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public whose interest it is that the judges should be at liberty to exercise their functions with independence and without fears of consequences.'" <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967) (internal citations omitted). "Judicial immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e. actions not taken in the judge's judicial capacity. . . Second, a judge is not immune from actions, though judicial in nature, taken in complete absence of all jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). The Ninth Circuit has identified four factors relevant to resolving whether a particular act is judicial in nature: (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity. <u>Id.</u> (<u>quoting</u> <u>Meek v. County of Riverside</u>, 183 F.3d 962, 967 (9th Cir. 1999)); <u>see also</u> <u>Stump</u>, 435 U.S. at 362 ("[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity"). The inquiry focuses on whether the "nature and function of the act" is normally performed by a judge, "not the act

itself." <u>Mireles</u>, 502 U.S. at 13.

Plaintiff argues that Judge Keller is not entitled to absolute judicial immunity because he was acting beyond the scope of his judicial function when he issued a no-bail bench warrant for Plaintiff and had him arrested and incarcerated despite the faulty summons. Plaintiff relies on <u>Mireles v. Waco</u>, 502 U.S. 9 (1991), where the Supreme Court held that a judge was acting within his judicial capacity and performing "a function normally performed by a judge" when he called a defendant into his courtroom. Plaintiff focuses on the fact that the case dealt with a person inside the courtroom, whereas he was not in the courtroom when Judge Keller made his rulings, but that is beside the point. Judge Keller was performing functions normally performed by a judge in all of the actions that Plaintiff attributes to him; in particular, issuing warrants and setting bail are core judicial functions. There are also no allegations that might support an argument that Judge Keller's actions were taken in the "clear absence of jurisdiction." <u>See Neal v. Rodriguez</u>, 185 F.3d 868 (9th Cir. 1999), citing <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57, 360 (1978)). All of the claims against Judge Keller are dismissed with prejudice based on judicial immunity.

### 3. Failure to State a Claim

Finally, Judge Keller argues that Plaintiff has failed to state any claim against him based on the facts alleged in the complaint because there has been no showing of his involvement in or causal connection between any alleged constitutional violation and there are insufficient allegations of any conspiracy or Judge Keller's participation in any conspiracy. While the Court agrees with Judge Keller that Plaintiff's claims against him fail to state a claim as pled, the more persuasive reason for dismissing all of the claims against Judge Keller with prejudice is the doctrine of judicial immunity.

### G. Claims Against All Defendants Are Dismissed

### 1. Fifth Amendment Claim is Dismissed With Prejudice

The Fifth Amendment provides that:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness

against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. Amend. V.  In addition to incorporating by reference the facts described above, in connection with his first claim Plaintiff alleges that "the state" did not properly serve him with a summons for arraignment, resulting in a no-bail bench warrant, arrest for failure to appear, and an improper seven day incarceration for what should have been a cite and release offense.  Compl. ¶ 56.

Defendants correctly argue that the due process clause of the Fifth Amendment, and the equal protection component thereof, only applies to actions of the federal government, and not to those of state or local governments.  <u>See Lee v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001); <u>Schweiker v. Wilson</u>, 450 U.S. 221, 227 (1981).  Plaintiff counters that all of the defendants were acting under color of state law, and therefore all of his Section 1983 claims survive.  He contends that it is "absurd" to argue that local governments need not provide Fifth Amendment due process protection, and attempts to factually distinguish the cases cited by Defendants.  However, Plaintiffs' arguments are largely unintelligible and do not support his position that Fifth Amendment due process applies to these municipal actors.  <u>See Bingue v. Prunchak</u>, 512 F.3d 1169, 1174 (9th Cir. 2008) (Fifth Amendment claim against local law enforcement officials "plainly foreclosed by the Constitution" because "the Fifth Amendment's due process clause only applies to the federal government").  As Plaintiff has not and cannot allege that any of the Defendants are federal actors, the Fifth Amendment claim is dismissed with prejudice as to all defendants on this basis as well as those stated elsewhere.

### 2.      Fourth Amendment Claim is Dismissed With Prejudice

42 U.S.C. § 1983 provides a federal remedy for the deprivation of "any rights, privileges, or immunities secured by the Constitution and law" caused by a person acting under color of state law.  To state a claim under 42 U.S.C. § 1983, a plaintiff must show "that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right."  <u>Estate of Imrie v. Golden Gate Bridge Highway and Transp. Dist.</u>, 282 F.Supp.2d 1145, 1148 (N.D.Cal. 2003) (quoting <u>L.W. v. Grubbs</u>, 974 F.2d

119, 120 (9th Cir. 1992)). "The threshold question is whether plaintiff has alleged a constitutional deprivation." <u>Estate of Imrie</u>, 282 F.Supp.2d at 1148; <u>see also Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998). "In order to state a claim for relief under section 1983, a plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights." <u>Thomas v. Hickman</u>, 2006 WL 2868967, at *1, 11 (E.D. Cal. 2006).

In addition to incorporating by reference the facts described above, in connection with his second claim Plaintiff alleges without explanation that all of the defendants violated his right to be free from unreasonable search and seizure, force, arrest and imprisonment without probable cause. Compl. ¶ 58.

### a. Newark Defendants

As discussed above, there are no allegations in the complaint specific to any actions that Defendants Becker or Leal took, and Plaintiff's vague and conclusory allegations of a supervisory role are insufficient to allege any plausible constitutional violation. <u>See</u> Compl. ¶ 16, 20. The only allegation specific to Officer Heckman is that he arrested Plaintiff pursuant to a warrant, handcuffed him and put him in a police car. Compl. ¶ 34-37. The only allegations against Officer Homayoun relate to his actions in transporting Plaintiff from his home to jail and communicating the charges against him. Compl. ¶¶ 39-40.

Plaintiff contends that his allegations against these individual defendants are sufficient because they had no lawful right to seize him based on a faulty warrant. However, the Fourth Amendment protects against unreasonable searches and seizures. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1997); <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989). To determine whether an officer's conduct was reasonable under the Fourth Amendment, the court considers the totality of the circumstances. <u>Graham</u>, 490 U.S. at 396. Here, even taking all of Plaintiff's allegations as true, there is no indication that Hallman or Houman knew or should have known that the warrant was purportedly faulty, or that they otherwise mistreated Plaintiff. None of the allegations specific to any of the Newark Defendants give rise to a plausible deprivation of any constitutional

right.  The Fourth Amendment claim is dismissed with prejudice as to all Newark Defendants.[10]

### b.    Fremont Defendants

The Fremont Defendants argue that there are no allegations indicating that Officer Ramsey (or any of the other Fremont defendants) unreasonably "seized" Plaintiff within the meaning of the Fourth Amendment.  See Compl. ¶¶ 35-36 (Plaintiff spoke with Ramsey for 20 minutes regarding a car theft, Ramsey told him he was not going to arrest him, tried to shake his hand at the end of the meeting and then left).  Plaintiff responds that Officer Ramsey's actions compelled the other defendants to arrest and incarcerate him. However, he does not explain this in either the complaint or his Opposition, other than as part of an unexplained mention of a conspiracy. This is insufficient to allege a Fourth Amendment seizure by any of the Fremont Defendants, and this claim should be dismissed as to all of the Fremont Defendants.

### c.    County Defendants and Judge Keller

All of the federal claims against the County Defendants and Judge Keller are dismissed with prejudice for the reasons discussed above, and therefore the Fourth Amendment claim is also dismissed with prejudice as to them.

### 3.    Sixth Amendment Claim Is Dismissed With Prejudice

The Sixth Amendment provides in part that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him . . . and to have the Assistance of Counsel for his defense."  In addition to incorporating by reference the facts described above, in connection with his third claim Plaintiff alleges that all defendants violated his right to have defense witnesses testify on his behalf because "Doe #1 and Hernandez contacted properly

---

[10] In this context, Plaintiff argues that the Due Process clause generally confers no affirmative right to government aid, but argues that the case is different when the state creates a special relationship through incarceration or a similar restraint of liberty.  He relies on DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199–200 (1989), which hold that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." It is entirely unclear how this is relevant to the adequacy of his pleading against the Newark Defendants.  While they may have had a duty to provide for his safety and well-being while in their custody, there is no allegation that they failed to perform this duty.

subpoenaed defense witnesses while Doe #1 and Hernandez were prosecuting Plaintiff for a crime" and told them not to appear in court.  Compl. ¶ 60.

There are no allegations in the complaint relating to any Newark or Fremont Defendant or Judge Keller that might implicate Plaintiff's Sixth Amendment rights.  The only potentially relevant allegations relate to actions taken by one or more of the Alameda County defendants, but for the reasons discussed above those defendants are entitled to prosecutorial immunity for their actions.  As pled in his complaint, Plaintiffs theory of Sixth Amendment liability for the other defendants appears to rest entirely on his unsupported and implausible theory that they somehow "conspired" with Alameda County defendants and are therefore liable for the actions of others as co-conspirators.  As discussed above, however, Plaintiff's vague allegations of a conspiracy are insufficient.  When questioned during oral argument about how he might amend his complaint, Plaintiff could not further articulate any facts that might support a conspiracy theory.  Plaintiff's Sixth Amendment claim is dismissed with prejudice as to all defendants.

### 4.  Fourteenth Amendment Equal Protection Claim is Dismissed With Prejudice

"To state a claim under 42 U.S.C. §1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999); see also Engquist v. Ore. Dep't of Agric., 553 U.S. 591, 607 (2008); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  In addition to incorporating by reference the facts described above, in connection with his fourth claim Plaintiff alleges without explanation that all defendants violated his right to equal protection.  Compl. ¶ 62.

There is no allegation that Plaintiff is a member of a protected class or that any Defendant acted with a discriminatory intent or purpose against him based on membership in a protected class.  Likewise, there are no allegations beyond unsupported conclusions that Plaintiff was treated differently than others similarly situated to him.  See Village of Willowbrook, et al. v. Olech, 528 U.S. 562, 564 (2000); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff contends in his oppositions that he is both "a member of a specific class" and also can state a Fourteenth Amendment claim for a "class of one" because he was treated differently from others similarly situated. However, this barebones assertion without any factual support is insufficient to state a Fourteenth Amendment equal protection claim. When questioned on this issue during oral argument, Plaintiff could not articulate any further facts that might plausibly support an equal protection claim against any defendant. This claim is therefore dismissed without prejudice as to all defendants.

**5.    §1983 Conspiracy Claim is Dismissed With Prejudice**

In addition to incorporating by reference the facts described above, in connection with his fifth claim Plaintiff generally alleges that all Defendants conspired to violate his constitutionally protected rights. Compl. ¶ 64. Plaintiff also cites 18 U.S.C. § 241 without explanation. Id.

As discussed above, Plaintiff has not and cannot plausibly allege a conspiracy among any of the defendants to violate his civil rights. At most, he contends that the municipalities have a policy or practice of working together in some capacity in the law enforcement context. Even taking this factually unsupported assertion as true, Plaintiff is unable to connect any alleged policy or practice to any common unlawful objective or action or any alleged violation of his rights. See Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997) (heightened pleading standard applies to § 1983 conspiracy claims and bare allegations that a defendant conspired with another are insufficient to state a claim). Therefore, Plaintiff's §1983 conspiracy claims is dismissed with prejudice as to all defendants.

To the extent that Plaintiff is attempting to rely on 18 U.S.C. §241 to support this claim, this is a criminal statute that does not provide an independent basis for civil liability. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that 18 U.S.C. §§241 and 242 are criminal provisions that provide no basis for civil liability). To the extent that Plaintiff might attempt to state a claim under 42 U.S.C. § 1985(3), this provision provides a cause of action against persons who "conspire . . . , for the purpose of depriving, either directly or indirectly, any person of or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ." Generally, section 1985(3) applies only when there is "some

racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 101 (1971). "A party must show purposeful discrimination to establish a claim under section 1985(3)." <u>Trerice v. Pedersen</u>, 769 F.2d 1398, 1402 (9th Cir. 1985). The allegation of such animus "constitutes an essential element of a cause of action under section 1985(3)." <u>Id</u>. For the same reason that Plaintiff's equal protection claim fails, he also would not be able to state a conspiracy claim under § 1985(3).

### 6.    Plaintiff's "Deprivation of Rights Under Color of Law" Claim is Dismissed With Prejudice

In addition to incorporating by reference the facts described above, in connection with his sixth claim Plaintiff alleges without explanation that all Defendants acted under color of law to violate his constitutionally protected rights. Compl. ¶ 66. Plaintiff does not explain any distinction between this claim and his other Section 1983 claims based on alleged constitutional violations or otherwise indicate why this is an appropriate stand-alone claim.

A general "deprivation of rights" claim is an inappropriate vehicle for vindicating the alleged wrongs raised in Plaintiff's complaint. <u>See Crown Point Dev., Inc. v. City of Sun Valley</u>, 506 F.3d 851, 853 (9th Cir. 2007) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); <u>Podesta v. City of San Leandro</u>, 2005 WL 2333802, at *1, 4 (N.D. Cal. 2005) (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)) ("[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the ... claims.'"). As Plaintiff is attempting to assert claims under other Amendments more specific to his allegations, this extraneous claim is dismissed with prejudice as to all Defendants.

### 7.    Mail and Wire Fraud and Attempt and/or Conspiracy to Commit Mail Fraud and/or Wire Fraud (Claims 7, 8, 9)

In addition to incorporating by reference the facts described above, in connection with his

seventh, eighth, and ninth claims Plaintiff alleges that all Defendants used the United States mail to defraud him by mailing a summons to the wrong address. This resulted in his failure to appear at an arraignment, which resulted in a warrant, arrest and incarceration. Compl. ¶ 68. The complaint also alleges that the police used telephones and police radios to prepare and execute the warrant. Compl. ¶ 70. The complaint cites 18 U.S.C. §§ 1341, 1346, and 1349 without explanation, and also alleges without explanation that all defendants conspired to commit mail and wire fraud. Compl. ¶ 72.

Assuming the truth of Plaintiff's allegations that some mail or wire fraud took place based on service of the May 19, 2014 document by mail instead of personal service, which is factually implausible and legally devoid of merit, "[t]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). For a section of the federal criminal code to provide a private right of action, there must be "at least [some] statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979); see also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15-16 (1979) ("[t]he question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction"); Diaz v. Davis, 549 F.3d 1223, 1230 (9th Cir. 2008) ("the statute must either explicitly create a private right of action or implicitly contain one").

The criminal code provisions cited by Plaintiff provide no private right of action or basis for civil liability, or otherwise provide that civil enforcement is available. See Oppenheim v. Sterling, 368 F.2d 516, 518-519 (10th Cir. 1966) (holding that 18 U.S.C. §§ 1341 and 1342, relating to mail fraud, are purely penal and rejecting 'the view that a violation of these penal statutes as such affords the court federal question jurisdiction in a civil case"; Aldabe, 616 F.2d at 1092 (finding no civil liability under criminal conspiracy statutes); Cobb v. Brede, 2012 WL 33242, at *2 (N.D. Cal. 2012), aff'd, 517 Fed. Appx. 556 (9th Cir. 2013) (18 U.S.C. §§ 1341 and 1343 "are the federal criminal statutes for mail and wire fraud . . . [that] do not provide litigants with a private right of action"); Reynolds v. Wilkerson, 2014 WL 4062771, at *4 (N.D. Cal. 2014)

(dismissing claims for damages for violation of the same criminal code provisions with prejudice because they did not confer a private right of action and cannot serve as the basis for federal question jurisdiction).  Plaintiff counters that the cited federal criminal statutes do not expressly prohibit a private right of action, but that is not the legal standard.

Further, Plaintiff argued in his oppositions and during oral argument that there is a private right of action for violation of these criminal statutes under RICO, provided that there is a pattern of criminal activity and interstate commerce is involved.  See 18 U.S.C. § 1961(1).  He argues that discovery will show that the Alameda County DA's Office engaged in such a pattern by improperly mailing criminal summons to multiple defendants over a period of years.  According to Plaintiff, this means that all other defendants are also liable for these alleged crimes under a RICO conspiracy theory.  See generally Dkt. No. 42 at 22 to 27; Dkt. No. 44 at 22 to 26.  To the extent that he has not properly alleged RICO violations in the complaint, Plaintiff requests leave to amend and asks the Court to declare the Alameda County District Attorneys' Office an "enterprise" for purposes of a RICO claim.

As discussed above, Plaintiff's argument that the Alameda County DAs Office acted illegally by mailing him a summons is contrary to applicable law.  Even if it were not, Plaintiff's reliance on RICO is misplaced.  RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c).  The elements of a RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiffs' business or property.'"  Living Designs, Inc. v. E.I Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005), cert. denied, 547 U.S. 1192 (2006). For purposes of RICO, "racketeering activity"" means: (1) "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year[;]" and (2) any act which is indictable under a number of specified criminal statutes.  See 18 U.S.C. §1961(1). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity, the last of which occurred within ten years after the commission of a prior racketeering activity. 18

U.S.C. § 1961(5); <u>Lauter v. Anoufrieva,</u> 642 F.Supp.2d 1060, 1079 (C.D.Cal. 2009).  Plaintiff has not alleged any of these elements against any Defendant and, based on the facts he has alleged, he could not plausibly amend the complaint to do so.

Moreover, to have standing, a civil RICO plaintiff must show that his alleged harm qualifies as injury to "business or property" and the harm was due to the alleged RICO violation. <u>Canyon County v. Syngenta Seeds, Inc.</u>, 519 F.3d 969, 972 (9th Cir.), <u>cert. denied</u>, 129 S.Ct. 458 (2008).  RICO standing requires compensable injury and proximate cause. <u>Newcal Indus., Inc. v. IKON Office Solution,</u> 513 F.3d 1038, 1055 (9th Cir. 2008).  An injury is compensable under RICO if it constitutes "harm to specific business or property interest" and if the alleged business or property interest is cognizable under state law. <u>Diaz v. Gates</u>, 420 F.3d 897, 900 (9th Cir. 2005) (en banc), cert. denied, 546 U.S. 1131 (2006).  Plaintiff has also not alleged any of these elements as to any Defendant and could not plausibly amend the complaint to do so.  These claims are dismissed with prejudice as to all defendants.

### 8.    Kidnapping, Conspiracy to Kidnap and Using Mail in Furtherance of the Commission of Kidnapping; Hostage Taking; Receiving and Possessing Ransom Money (Claims 10, 11, 12)

In addition to incorporating by reference the facts described above, in connection with his tenth, eleventh and twelfth claims, Plaintiff alleges that Defendants used the United States mail to further his kidnapping by mailing the summons to the wrong address and they conspired to kidnap him, took him against his will while armed, held him hostage for seven days, demanded $5,000 for his release.  Compl. ¶¶ 74-78.  Plaintiff also cites 18 U.S.C. §§ 1201, 1202 and 1203 without explanation.  <u>Id</u>.

Despite his inflamatory language, and even assuming the truth of Plaintiff's factual allegations, "[t]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action." <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 568 (1979). For a section of the federal criminal code to provide a private right of action, there must be "at least [some] statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 316 (1979); <u>Diaz v. Davis</u>, 549 F.3d 1223, 1230 (9th Cir. 2008) ("the statute must either explicitly create a private right of action

or implicitly contain one"). None of the federal criminal statutes cited by Plaintiff in connection with his claims for kidnapping, conspiracy to kidnap, using the mail in furtherance of the offense of kidnapping, hostage taking, or receiving and possessing ransom money explicitly or implicitly create a private right of action, or otherwise provide that civil enforcement is available.

Plaintiff counters that these federal criminal code provisions do not expressly preclude a private right of action, and additionally he could amend to plead them as part of a RICO violation. As discussed above, Plaintiff's argument has no merit, any reliance on a conspiracy theory has not been adequately pled, and any claims based on an allege RICO violation would fail. These claims are dismissed with prejudice as to all defendants.

### 9. Criminal Street Gang Injunction Claim is Dismissed With Prejudice

In addition to incorporating by reference the facts described above, in connection with his thirteenth claim, Plaintiff alleges that "[b]y definition, the defendants named in this action are members of a criminal street gang" and Plaintiff seeks to enjoin them from associating with each other. Compl. ¶ 80. Without explanation, Plaintiff cites 18 U.S.C. § 521, which proscribes criminal conduct of criminal street gangs and increases the penalty for street gang crimes. Id. As above, there is no implicit or explicit private right of action in connection with the purely penal federal criminal street gang injunction statute. Plaintiff counters that this federal criminal code provision does not expressly preclude a private right of action, and he could amend to plead it as part of a conspiracy under RICO. As discussed above, Plaintiff's argument has no merit and any claims based on an allege RICO violation will fail. This claim is dismissed with prejudice as to all defendants.

### 10. State Law Claims Are Dismissed With Prejudice

#### a. Failure to Timely File Administrative Claims

In addition to incorporating by reference the facts described above, in connection with his state law claims (claims 14-20), Plaintiff acknowledges that he:

> has not yet filed administrative claims with any entity listed as a defendant in this complaint in compliance with California Government Code § 910, et seq. due to legal infeasibility that was created by the defendants. Defendants were engaged in malicious criminal prosecution of plaintiff when the six month deadline expired for filing state claims. A criminal conviction would likely have had a significant

> detrimental effect on any claims. If plaintiff had filed state claims before the six-
> month deadline, the defendants would have had an incentive to continue their
> malicious prosecution of plaintiff in an effort to manage civil liability. Plaintiff
> will ask the court to grant a waiver for filing these administrative state claims.

Compl. ¶ 3. For the reasons discussed below, and because Plaintiff expressly concedes in his complaint that he did not file administrative claims with any entity named as a Defendant prior to filing this complaint, all of his state law claims are dismissed with prejudice.[11]

California's Government Tort Claims Act provides that, "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." Cal. Govt. Code § 945.4; see also Watson v. State of California, 21 Cal. App. 4th 836, 844 (1993) (before any tort action is brought against a public entity or public employee, a government claim must be served on the public entity). "[A] cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred" under California Government Code §§911.2 or 945.6. See Cal. Govt. Code § 950.2; Padula v. Morris, 2008 WL 1970331, at *5 (E.D.Cal. 2008). Likewise, a claim against a superior court judge such as Judge Keller must first be presented to the court executive officer, and Plaintiff admits that he has not done so here. See Cal. Gov. Code § 915(c)(l).

"A claim relating to a cause of action for . . . injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. Cal. Govt. Code § 911.2(a).[12] "'[I]t

---

[11] On October 5, 2016, Plaintiff mailed this Court copies of what appear to be administrative claims that he mailed to various municipal offices in late September. See Dkt. No. 81. The Court added this submission to the electronic docket in this case, but it has no bearing on the issues before this Court.

[12] A claimant who fails to present a claim within six months may apply to the public entity in writing for leave to present a late claim, but such application must be presented within a year after accrual of the claim. Gov. Code § 911.4. If the application is denied, then the claimant may petition the court for relief from the claim presentation requirement, but that petition must also be filed within a year after the claim accrued. Gov. Code § 946.6(c)(1). Plaintiff does not claim to have made any attempt to file a late administrative claim by following these procedures prior to

1 is generally said that 'an action accrues on the date of injury.' Alternatively, it is often stated that the

2 statute commences 'upon the occurrence of the last element essential to the cause of action.'"

3 <u>Vaca v. Wachovia Mortgage Corp.</u>, 198 Cal. App. 4th 737, 743 (2011) (internal citations omitted).

4 Compliance with the claim presentation requirement is an essential element of a plaintiff's state

5 law claims, and must be affirmatively alleged. <u>State of California v. Superior Court (Bodde)</u>, 32

6 Cal.4th 1234, 1243 (2004) ("A plaintiff must allege facts demonstrating or excusing compliance

7 with the claim presentation requirement," and otherwise the complaint is subject to dismissal).

8 Presenting a claim and otherwise following the requirements of the Tort Claims Act is a

9 jurisdictional requirement, and failure to do so results in dismissal of the claim. <u>See Dixon v. City</u>

10 <u>of Turlock</u>, 219 Cal. App. 3d 907, 913 (1990).

### 1. Estoppel Does Apply

12   Plaintiff does not dispute that he did not file any administrative tort claims relating to his

13 allegations prior to filing this complaint, but argues in his oppositions that he was prevented from

14 timely filing "some" government claims due to defendants' actions combined with the nature of

15 his claims for relief. <u>See</u> Dkt. 42 at 28; Dkt. No. 44 at 28; <u>see also</u> Dkt. No. 43 at 8. He contends

16 that all defendants were part of a conspiracy and he would have been prejudiced in his criminal

17 proceedings and his situation would have gotten worse if he had filed administrative claims while

18 those proceedings were pending because Defendants would have been incentivized to continue

19 their criminal prosecution of him. Plaintiff requests that the Court "waive" the claim filing

20 requirement on grounds of equitable estoppel. <u>See State of California v. Superior Court (Bodde)</u>,

21 32 Cal. 4th 1234, 1243 (2004); <u>see also John R. v. Oakland Unified School District</u>, 48 Cal. 3d

22 438, 445 (1989) ("public entity may be estopped from asserting the limitation of the claims statute

23 where its agents or employees have prevented or deterred the filing if a timely claim by some

24 affirmative act").

25   General allegations such as Plaintiff's are insufficient, and a plaintiff must specifically

filing this untimely complaint.

plead facts to establish the elements of estoppel.  See Chalmers v. County of Los Angeles, 175 Cal. App. 3d 46l, 467 (1985).  The essential elements of estoppel are: "false statements or concealments, or conduct amounting thereto, with reference to the transaction made by one who has actual or virtual knowledge of the facts, to another who is ignorant of the truth, with the intention, resulting in consummation, that the other should act on such false statements or concealments, or equivalent conduct."  Bruce v. Jefferson Union High Sch. Dist. of San Mateo Cty., 210 Cal. App. 2d 632, 634 (1962) (defendants equitably estopped from asserting failure to present administrative claim where they gave plaintiff information on how to pursue claim and did not tell him to file administrative claim).

Here, there are no allegations that any defendant dissuaded Plaintiff from timely filing an administrative claim, gave him false information, or otherwise prevented him from doing so. Plaintiff's speculation about what might have happened in the ongoing criminal proceedings against him has no factual support.  When directly questioned on this issue during oral argument, Plaintiff could not add anything to the allegations in the complaint and his opposition briefs that might make an estoppel theory plausible.  Further, as a matter of law, pending criminal charges do not excuse timely compliance with the government claims requirements.  See Cal. Gov't Code 945.3 (while those charged with a criminal offense may not bring court action for damages against an entity or police officer related to pending criminal charges, "[n]othing in this section shall prohibit the filing of a claim with the board of a public entity, and this section shall not extend the time within which a claim is required to be presented pursuant to Section 911.2").

As Plaintiff has not and cannot allege facts to support a theory of equitable estoppel to excuse his compliance with California's administrative tort claim filing requirements, all of his state law claims against all defendants are dismissed with prejudice.

## 2. The Claim-Filing Deadlines Have Passed

Alternatively, Plaintiff argues that the filing deadline for some of his administrative claims is not until October 21, 2016, six months after April 22, 2016 when he contends that the criminal prosecution against him ended.  See Dkt. No. 41 at 9; Dkt. No. 42 at 29.  However, the alleged April 22, 2016 dismissal date of the criminal action is not contained in the complaint and the latest

date for any of the events alleged in the complaint is "February, 2015." See Compl. at ¶ 11. Based on the complaint as pled, Plaintiff had until six months from that date within which to present a claim and it is undisputed that he did not do so. Even if the April 22, 2016 date were alleged in the complaint, there is no indication as to why the ending date of the criminal prosecution would be relevant to the accrual date of any of his claims based on alleged actions that occurred years earlier.

Specific to Judge Keller, Plaintiff also relies on his allegation that Judge Keller did not exonerate bail until 15 months after it was posted. See Compl. ¶ 53. However, his claims are not based on Judge Keller's decision to exonerate bail and there is no allegation of harm relating to this action, so this date is irrelevant to when his administrative tort claims accrued. In contrast, the allegations relating to Judge Keller focus on judicial actions taken in June and July 2014. Plaintiff thus had six months, until approximately January 2015, in which to file an administrative claim thereafter. In any event, even if Plaintiff's allegation that Judge Keller did not exonerate bail for 15 months, until approximately October 2015, were somehow actionable, Plaintiff would have had to file a claim by April 2016. Because he did not, his state law claims are time-barred.

### b. Failure to State a Claim

Even if Plaintiff's state law claims for battery, false arrest and false imprisonment, kidnapping, conspiracy to falsely and maliciously indict Plaintiff for a crime; conspiracy to commit fraud; committing acts against Plaintiff that were injurious to due administration of laws, and violation of California Civil Code §52.1 were not legally barred for failure timely present an administrative claim, the Fremont Defendants also argue that all of the state law claims against them should be dismissed for failure to state a claim because there are no allegations specifically relating to the actions of the City of Fremont, Diaz or Lucero and they are immune from liability for the conduct of others. See Gov't Code § 820.8. With respect to Officer Ramsey, there are no allegations that he committed any sort of battery, assault, or kidnapping; indeed there is no allegation that he used any force or arrested Plaintiff. There are also insufficient allegations that he conspired with anyone or attempted to intimidate Plaintiff.

Plaintiff responds that he has properly stated state law claims against all defendants in light

of his conspiracy theory, because all defendants are liable for all acts of their co-conspirators.  As

discussed above, all claims based on a conspiracy claim fail and are dismissed with prejudice.  He

also argues that unreasonable force was used and battery was committed because he should not

have been arrested in the first place.  However, he elsewhere acknowledges that "[t]he nature and

extent of these acts of battery are best described as acts that a typical arrestee and prisoner would

be subjected to during the course of typical, lawful, constitutional and custodial imprisonment."

Dkt. No. 44 at 32.  Even if Plaintiff's state law claims could somehow survive despite his failure

to timely file any administrative claim, Plaintiff has not stated a claim as to the Fremont

Defendants and the state law claims against them are also dismissed on this basis.[13]

### H.      Prayer for Injunctive Relief

Defendants challenge Plaintiff's demand for "preliminary and permanent injunctive relief

restraining defendants from engaging in the unlawful and unconstitutional actions complained of"

and from associating with each other.  See Compl. ¶ 23.  They contend that no facts are alleged

showing he has standing to seek equitable relief, or justifying such relief.  "Historically, damages

have been regarded as the ordinary remedy for an invasion of personal interests in liberty."

Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 395 (1971).  The Supreme Court

has held that "recognition of the need for a proper balance between state and federal authority

counsels restraint in the issuance of injunctions against state officers . . . in the absence of

irreparable injury which is both great and immediate."  City of Los Angeles v. Lyons, 461 U.S. 95,

112 (1983).  "The Court has repeatedly held that the basis for injunctive relief in the federal courts

has always been . . . the inadequacy of legal remedies."  Weinberger v. Romero-Barcelo, 456 U.S.

305, 312 (1982).

Even if Plaintiff could state a viable claim for relief against any defendant, Plaintiff's

complaint does not indicate any likelihood of irreparable injury or an inadequate remedy at law

that would justify an injunctive relief award. Plaintiff appears to believe that injunctive relief is

appropriate in light of an alleged RICO violation, but does not otherwise even attempt to justify

---

[13] Though the other groups of defendants did not make this same argument, dismissal of the claims against them for failure to state a claim also appears to be appropriate.

this relief. As stated above, Plaintiff will not be permitted to amend the complaint to attempt to assert a RICO theory as such an amendment would be futile.

### I.    Prayer for Declaratory Relief

Defendants also move to dismiss Plaintiff's demand for declaratory relief, arguing that such relief is inappropriate where, as here, it is sought to redress past wrongs rather than prospectively resolve disputes. See United States v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1985) (en banc). A motion to dismiss a claim for declaratory relief may be granted where it is "duplicative and unnecessary" because an "adequate remedy exists under some other cause of action" sought by plaintiff. Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009). Plaintiff does not dispute this point and his demand for declaratory relief is also dismissed on this ground.

### J.    Prayer for Punitive Damages

Plaintiff's prayer also seeks "punitive and exemplary damages" against all defendants, including the municipalities. Compl. ¶ 23. Punitive damages against a municipality may not be recovered under 42 U.S.C. § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996). "Similarly, California law forbids the imposition of punitive damages against a public entity under California Civil Code § 3294." Wilhite v. City of Bakersfield, 2012 WL 273088 (E.D. Cal 2012). Plaintiff's complaint fails to state a valid claim for punitive damages against any municipality, and the demand is also dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, all of Plaintiff's claims against all Defendants are hereby dismissed with prejudice. A separate judgment will be issued forthwith.

**IT IS SO ORDERED.**

Dated:  October 12, 2016

ELIZABETH D. LAPORTE
United States Magistrate Judge